STATE EX REL. QUINTIN, Appellant, *v.* EDWARDS, Mayor, ETC., Respondent.

(No. 2,598.)

(Submitted December 22, 1908.   Decided February 8, 1908.)

[99 Pac. 940.]

*Municipal Corporations—Police Commission—Statutes—Constitutionality—Status of Policemen—Removal—Powers of Mayor —Mandamus.*

Police Commission Act—Policemen—Extending Term of Office—Constitution—Provision Inapplicable.
   1.   Section 31 of Article V of the Constitution, which declares that no law shall extend the term of any public officer, etc., does not apply to the provision of the Act of 1907 (Laws 1907, p. 344, creating a police commission in cities and towns), that an officer then serving on the force may be reappointed, such appointment to hold during good

behavior or until the incumbent shall become incapacitated—thus prac-
tically insuring to such officer an indeterminate tenure—since prior
to his appointment under the provisions of the Act, he is obliged to
pass an examination and serve a probationary period of six months,
the same as any other applicant for such a position.

Same—"Special Commission"—Constitutional Provision Inapplicable.
2.  The Act establishing a police commission in cities and towns
(Laws 1907, p. 344) does not violate section 36, Article V of the
Constitution, declaring that the legislature shall not delegate to any
special commission power to make, supervise or interfere with any
municipal improvement, etc., or perform any municipal function what-
ever.  The board thus created, *held*, not to be a "special commission"
within the meaning of this section of the Constitution.

Same—Status of Policemen—State Officers.
3.  A policeman is not a state officer.  He is a public officer in the
sense that he has certain duties to perform other than those strictly
pertaining to the government of the municipality for which he is
acting.

Same—Policemen—"Municipal" Officers—Servants—Employees.
4.  Strictly speaking, a policeman is not a "municipal" officer—that is,
a "city" officer—as that term is used in section 16, Article VI of the
state Constitution, declaring that the legislative assembly may provide
for the election and appointment of such municipal officers as public
convenience may require, but that their term of office shall not in any
case exceed two years; nor is such officer a mere servant or employee
of the municipality.

Same—Policemen—Removal—Powers of Mayor.
5.  *Held*, that section 14 of the Act establishing a police commission
in cities and towns, which repeals all Acts and parts of Acts in con-
flict with the provisions of the legislation, and then declares that
nothing therein contained shall abridge any of the powers possessed
by the mayor under any other provision of law or any ordinance, does
not reserve to the mayor the power of suspension and removal he
theretofore possessed under section 3250, Revised Codes, but takes
from him such right.

*Appeal from District Court, Lewis and Clark County; W. R.
C. Stewart, Judge, presiding.*

APPLICATION by the state, on the relation of Moses Quintin,
for a writ of *mandamus* against Frank J. Edwards, as mayor
of the city of Helena.  From a judgment for defendant re-
lator appeals.  Reversed and remanded.

*Mr. W. J. Pigott,* and *Mr. Massena Bullard,* for Appellant.

Policemen are officers of the state.  The police board is an
agency of the state.  Police commissioners are in fact state
officers, not municipal, though they be appointed by the city
and the city be taxed to pay them.  (*Davock* v. *Moore,* 105

Mich. 120, 63 N. W. 424, 28 L. R. A. 783; *People* v. *Reilly,* 53 Mich. 260, 18 N. W. 849; *Taylor* v. *Philadelphia Board of Health,* 31 Pa. 73, 72 Am. Dec. 724; *State* v. *Covington,* 29 Ohio St. 102; *State* v. *Kolsem,* 130 Ind. 434, 29 N. E. 595, 14 L. R. A. 566; *Roddy* v. *Finnegan,* 43 Md. 505; *Burch* v. *Hardwicke,* 30 Gratt. 24, 32 Am. Rep. 640; *Buttrick* v. *City of Lowell,* 1 Allen, 172, 79 Am. Dec. 721; *People* v. *Hurlbut,* 24 Mich. 44, 9 Am. Rep. 103; *Everill* v. *Swan,* 17 Utah, 514, 55 Pac. 68; *Ex parte Tracey* (Tex. Cr.), 93 S. W. 538; *Wright* v. *Chicago,* 60 Ill. 312; *Farrell* v. *Bridgeport,* 45 Conn. 191; *Norristown* v. *Fitzpatrick,* 94 Pa. 121, 39 Am. Rep. 771; *Horton* v. *City etc. of Newport,* 27 R. I. 283, 61 Atl. 759, 1 L. R. A., n. s., 512, 518; 28 Cyc. 497, and cases there cited; *State* v. *Mason.* 153 Mo. 23, 54 S. W. 524; *State* v. *Police Commissioners,* 34 Mo. 546.)

Should the court hold the foregoing position to be untenable then we contend: Policemen are not municipal officers within the meaning of section 6, Article XVI, Constitution, but are mere employees or servants. The purpose of the legislative assembly to make policemen and members of a police force employees rather than officers is clearly manifested by the enactment of the police bill, even if it is not, as we think it is, clearly revealed in the Political Code as originally adopted. The title of the bill itself negatives the intention to make policemen and members of the police force officers. Throughout the bill the intention seems to be apparent to provide for the employment of policemen rather than to provide for the appointment of such persons as municipal officers.

The officers of the police department of a city of the first class are the chief of police and the members of the examining and trial board of the police department, who, as provided by section 4 of the police bill, "shall hold office for two years and until their successors are appointed and qualified." These constitute the officers of the police department. All other persons mentioned in the police bill as connected with the police department are members, and because of the language used in

defining their attitude to the department, they are employees of the department.

That the word "officer" is not limited in application to persons who occupy official positions is well understood, for the word is often used to designate one who holds a public station or employment. (See *United States* v. *Hartwell*, 6 Wall. 385. 18 L. Ed. 830; *United States* v. *Maurice*, Fed. Cas. No. 15,747, 2 Brock. 96; *Butler* v. *Regents*, 32 Wis. 124; *Hall* v. *Wisconsin*, 103 U. S. 5, 26 L. Ed. 302; *Vaughn* v. *English*, 8 Cal. 40.)

That a policeman is not a municipal officer within the intent of the legislative assembly or the meaning of the Constitution, see *People* v. *Cain*, 84 Mich. 223, 47 N. W. 484; *Commonwealth* v. *Stokely*, 4 Pa. Co. Ct. Rep. 334, 20 Week. Not. Cas. 315, and other cases first above cited.

But if the court should hold against both contentions made above, then we contend: If a policeman is a municipal officer within the meaning of the constitutional provision invoked, and if it was unconstitutional to prescribe a term longer than two years, the police bill is nevertheless constitutional in so far as a two-year term is concerned. (*State* v. *Long*, 21 Mont. 26, 52 Pac. 645; *Proctor* v. *Blackburn*, 28 Tex. Civ. App. 351, 67 S. W. 548; *Cawthon* v. *City of Houston*, 31 Tex. Civ. App. 1, 71 S. W. 329; *City of Paris* v. *Cabiness*, 44 Tex. Civ. App. 587, 98 S. W. 925; *People* v. *Hurlburt*, 24 Mich. 44, 9 Am. Rep. 103.)

*Mandamus* is the proper remedy for the reinstatement of appellant, whether he be an officer or an employee of the city. (*Thompson* v. *Troup*, 74 Conn. 121, 49 Atl. 907; 26 Cyc. 253, 257, 260; 28 Cyc. 447, 552; Spelling on Extraordinary Remedies, sec. 1576; *Pratt* v. *Board of Police Commissioners*, 15 Utah, 1, 49 Pac. 747, 750.)

*Mr. Edward Horsky*, for Respondent.

The police commission bill is repugnant to the Constitution in providing for a tenure "for life," in excess of the two-year constitutional limitation. "During good behavior" is the equivalent of "during life." (*In the Matter of Hennen*, 13

Pet. (U. S.) 230, 259, 10 L. Ed. 138; *Blake* v. *United States,*
103 U. S. 227, 26 L. Ed. 462; see, also, *People* v. *Perry,* 79
Cal. 105, 21 Pac. 423.) From the last case cited it will be
seen that it cannot be successfully contended by the relator
that the law would be valid for an appointment for two
years and void as to the excess. The decision covers the very
point mentioned. It is there also said with relation to a con-
stitutional provision much like our section 6, Article XVI: ''The
argument of counsel for respondent, that this section of the new
Constitution refers exclusively to officers mentioned in the Con-
stitution itself, and not to officers of statutory creation, is
ingenious, but not convincing.'' (See, also, *Estate of Mahoney,*
133 Cal. 182, 85 Am. St. Rep. 155, 65 Pac. 389; *Ex parte
Keeney,* 84 Cal. 304, 24 Pac. 34; *State* v. *Johnson,* 123 Mo.
51, 27 S. W. 399; *People* v. *Newman,* 96 Cal. 608, 31 Pac. 564.)
That a policeman is an officer, see *Jacksonville* v. *Allen,* 25 Ill.
App. 54; *Thornton* v. *Missouri & P. R. Co.,* 42 Mo. App. 58;
23 Ency. of· Law, 2d ed., 322-325; *Shelby* v. *Alcorn,* 36 Miss.
273, 72 Am. Dec. 169, note 179, 188, 189; *Cawthon* v. *City of
Houston,* 31 Tex. Civ. App. 1, 71 S. W. 329; *Brown* v. *Russell.*
166 Mass. 14, 55 Am. St. Rep. 357, 43 N. E. 1005, 1010, 32
L. R. A. 253; *Dempsey* v. *New York Central & H. R. Co.,* 146
N. Y. 290, 40 N. E. 867; *Woodhull* v. *City of New York,* 150 N.
Y. 450, 44 N. E. 1038, 1039; *Proctor* v. *Blackburn,* 28 Tex.
Civ. App. 351, 67 S. W. 548. A policeman is primarily a
municipal officer, and *ex-officio* (under the Penal Code) a peace
officer, and not a state officer. That the members of police
boards are not state officers, see *City of Louisville* v. *Wilson,*
99 Ky. 598, 36 S. W. 944; *Mayor of Savannah* v. *Grayson,* 104
Ga. 105, 30 S. E. 693; *Attorney General* v. *Connors,* 27 Fla. 329,
9 South. 7; *Barnes* v. *District of Columbia,* 91 U. S. 540, 23 L.
Ed. 440.

Much of the confusion that has arisen in more recent years
in differentiating between who are municipal officers as such
and who are officers of the state, has arisen from the use of
certain language used in the earlier decisions, in determining

whether the city was liable for certain torts of officers. The doctrine laid down in 2 Dillon on Municipal Corporations, Fourth Edition, section 975, that "police officers appointed by a city are not its agents or servants so as to render it responsible, etc.," does not mean that therefore they are not primarily officers of the city, as such. The decisions in more recent years base the question of the city's liability or nonliability for officers' particular acts, not upon the question as to whether an officer, as such, is one of the city or one of the state, but upon the nature of the duty which he was performing.

The decisions are uniform, even though it was merely a violation of the city ordinances, that an officer in making an arrest of the offender for such violation, is nevertheless, regarded as performing a public duty concerning the public at large, and thereby the municipality is not liable. That a city is not liable for torts of its police officers for arrest for violation of ordinances. see the following cases: *Culver* v. *City of Streator*, 130 Ill. 217, 22 N. E. 810; *Calwell* v. *City of Boone*, 51 Iowa, 687, 33 Am. Rep. 154, 2 N. W. 614; *Stinnett* v. *Sherman* (Tex. Civ. App.), 43 S. W. 847; *Vaughtman* v. *Town of Waterloo*, 14 Ind. App. 649, 43 N. E. 476; *Taylor* v. *City of Owensboro*, 98 Ky. 271, 56 Am. St. Rep. 361, 32 S. W. 948; *Whitfield* v. *City of Paris*, 84 Tex. 431, 31 Am. St. Rep. 69, 19 S. W. 566, 15 L. R. A. 783. That a municipal corporation is not liable for the torts of its ordinary employees or servants, such as drivers of a sprinkling cart, etc., while performing public duties, see *Conelly* v. *City of Nashville*, 100 Tenn. 262, 46 S. W. 565; *Culver* v. *Streator*, 130 Ill. 217, 22 N. E. 810.

The very essence of this entire police bill, its design, its extent, and its purpose, was to afford a tenure for life. But this is just what the Constitution interdicts. "When the main object of the statute in question is unconstitutional, and the other provisions are connected therewith, all parts of a single scheme, permeating the entire act, the whole fails, and it cannot be adjudged good in part and void in part. It must stand or fall together." (*City of Rochester* v. *Briggs*, 50 N. Y. 553; *People*

v. *Kenney,* 96 N. Y. 294; *New York & L. I. Bridge Co.* v. *Smith,* 148 N. Y. 540, 42 N. E. 1088; Cooley's Constitutional Limitations, 4th ed., 215; *People* v. *Porter,* 90 N. Y. 68; *Jones* v. *Jones,* 104 N. Y. 234, 10 N. E. 269; *Allen* v. *Louisiana,* 103 U. S. 80, 26 L. Ed. 318; *Poindexter* v. *Greenhow,* 114 U. S. 270, 5 Sup. Ct. 903, 29 L. Ed. 185; *Warren* v. *Mayor etc. of Charlestown,* 2 Gray, 84; *Slauson* v. *Racine,* 13 Wis. 398; *State ex rel. Houston* v. *Perry County Commrs.,* 5 Ohio St. 497; *Allen County Commrs.* v. *Silvers,* 22 Ind. 491.)

MR. JUSTICE SMITH delivered the opinion of the court.

This is an appeal from a judgment of the district court of Lewis and Clark county entered in favor of the respondent after the court had sustained a general demurrer to the affidavit for a writ of mandate, and had granted a motion to quash an alternative writ theretofore issued. The affidavit filed by the relator alleges, in substance, as follows: Since May 1, 1908, the respondent, Frank J. Edwards, has been, and still is, mayor of the city of Helena, a city of the first class. The relator, Quintin, was a patrolman of the city at the time of the passage of Chapter 136, page 344, Laws of 1907, commonly called the "Police Commission Bill," approved March 7, 1907. On July 6, 1907, the then mayor appointed relator, who was duly qualified, to the position of patrolman on the police force for the probationary term of six months. Thereafter relator successfully passed examination by the "examining and trial board of the police department," and received from it a certificate that he was qualified for appointment upon the police force, and on March 23, 1908, the then mayor duly appointed him to the position or place of policeman or patrolman to hold during good behavior or until by age or disease he should become permanently incapacitated; whereupon he at once qualified and took the oath required of members of the police force, and ever since has been, and still is, a member of the force, to-wit, a policeman or patrolman, and has not become incapacitated and no charge whatsoever has been brought against him. The respondent mayor did on

June 3, 1908, unlawfully and contrary to the statute in that behalf enacted, and without power or jurisdiction so to do, discharge him from the force, and under color of the office of mayor ordered that he be forthwith discharged and precluded from using or enjoying his right and position as policeman, and be prevented from performing any duty or service as such. He objected to being discharged, and has always since held himself in readiness to perform his duties and has demanded that he be reinstated, but the mayor has refused to reinstate him. He prays that the mayor be compelled to do so.

In the brief of counsel for the appellant the statement is made that three ultimate questions are presented: First, whether or not the police commission bill is altogether null because repugnant to the state Constitution; second, if it is not void in its entirety, whether or not it is void in so far as it provides for the holding of positions of policemen for more than two years; and, third, if the bill is invalid in the respect last mentioned, whether or not that part of the bill which forbids the dismissal, without charges or trial, of policemen appointed to hold during good behavior until incapacitated, is effective to prevent, within two years next following such appointment, dismissal by the mayor without charges or trial. The so-called police commission bill provides for a police department in every city and town within Montana, such department to be under the charge and supervision of the mayor, who shall appoint all the members and officers. The members of the force shall be appointed for the probationary term of six months, and the mayor may then appoint them to hold during good behavior or until by age or disease they become permanently incapacitated. In cities of the first class the mayor shall appoint three residents as a board to be known as "the examining and trial board of the police department," to hold office for two years. Each applicant for a position on the force shall first undergo an examination, and, if he receives a certificate from the board, he is eligible to appointment for a probationary period of six months and may thereafter be appointed to hold during good behavior and

until incapacitated. Jurisdiction is conferred upon the board to try and decide all charges brought against any member or officer of the police department, and it is provided that no member or officer of the police force shall be discharged without a hearing or trial before the board, but the mayor and the chief of police, subject to the approval of the mayor, shall have the power to suspend a policeman or any officer under the chief for a period not exceeding ten days in any one month without a hearing or trial. Vacancies in the force shall be filled from the list of persons eligible to appointment. Members of the police department at the time of their appointment shall not be less than twenty-one years of age nor more than fifty, but this restriction does not apply to anyone who was a member of the police department when the bill was passed. Section 14 repeals all Acts and parts of Acts inconsistent with the provisions of the bill, and concludes: "But nothing herein contained shall abridge any of the powers possessed by the mayor of any city or town under any other provision of law or any ordinance."

It was contended in the court below by respondent, and is contended here, that the police commission bill is unconstitutional, in that it is in contravention of the following sections of the Constitution of the state, viz.: Section 6 of Article XVI, section 31 of Article V, and section 36 of Article V. Section 31 of Article V, above referred to, reads as follows: "Except as otherwise provided in this Constitution, no law shall extend the term of any public officer, or increase or diminish his salary or emolument after his election or appointment; provided, that this shall not be construed to forbid the legislative assembly from fixing the salaries or emoluments of those officers first elected or appointed under this Constitution, where such salaries or emoluments are not fixed by this Constitution." This section has no application to the case at bar. While the relator had acted as a patrolman prior to his appointment, under the new law his term of office, if we may use the expression at this. point of the inquiry, was not extended. He was obliged to pass the examination, serve the probationary term, and receive a new

appointment before acting as patrolman under the provisions of the police commission bill. The only advantage the former patrolmen had was that the limitation as to age did not apply to them.

Section 36 of Article V of the Constitution reads as follows: "The legislative assembly shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, or to levy taxes, or to perform any municipal functions whatever."

In its decision entitled *"In re Senate Bill Providing for a Board of Public Works in the City of Denver,"* 12 Colo. 188, 21 Pac. 481, the supreme court of Colorado, after quoting a constitutional provision relating to "special commissions," similar to our section 36 of Article V, said: "It is obvious at a glance that, if this clause controls the legislative discretion in the premises, it is because the board of public works, as con- stituted by the Act under consideration, is a 'special commission,' within the meaning of that phrase as it was understood by the framers of the Constitution. This we do not think, for the following, among other, reasons: The board in question is made a department or branch of the city government. Its power to invest money in public improvements is for the present con- fined to the expenditure of $3,000,000, but its authority is not limited to this expenditure, and upon making the same its ex- istence does not terminate. It is, like the board of health, fire, and other departments, permanent in its nature, being charged with certain continuous duties and vested with certain perpetual powers. These duties and powers are extensive, and in some respects unusual, but they relate exclusively to municipal affairs, and are essentially functions of the municipal govern- ment. The board has no separate existence, office or authority. It is an administrative agency or instrument, employed exclu- sively in the control and management of the city's improve- ments and other interests. In no material respect, save as to the scope and extent of its duties and powers, does it essentially

differ from the other departments by means of which the public interests are promoted, and the public health, peace and welfare protected within the municipality; nor is it an unusual agency, though in some respects its powers are extraordinary." Mr. Justice Elliott in a concurring opinion said: "In my opinion the term 'special commission,' as used in the constitutional provision under consideration, refers to some body or association of individuals separate and distinct from the city government; that is, created for different purposes, or else created for some individual or limited object not connected with the general administration of municipal affairs. It cannot be that the phrase 'special commission,' as here used, refers merely to a separate department of the city government as provided by the charter. To so conclude would be to hold that the board of supervisors, the board of aldermen, the health department, or the police department is a special commission; and hence that the General Assembly could not delegate to either of said boards or departments any power to make improvements, expend money, or perform any municipal function whatever." The bill under consideration by the Colorado court provided for a board of public works, the members of which should be appointed by the governor.

In the case of *Arnett* v. *State ex rel. Donohue,* 168 Ind. 180, 80 N. E. 153, 8 L. R. A., n. s., 1192, the supreme court of Indiana said: "The essential elements of what is known as the 'metropolitan police system' in the government of municipalities have been so often vindicated as against constitutional objection that the question should now be considered at rest."

The bill we have under consideration is not open to many of the objections considered by the Colorado court. In the first place, no extraordinary powers are conferred upon the members of the examining and trial board. Their duties consist merely in designating certain applicants as having the necessary qualifications to act as policemen and in trying charges against members. It is expressly provided that the mayor shall have charge of, and supervision over, the police department, and shall ap-

point all the members and officers thereof, including the members of the examining and trial board. No department is added to the city government and none is cut off therefrom. No powers are taken away from any department, nor are the powers or functions of any department interfered with or in any way curtailed. The Act is not violative of section 36, Article V, of the Constitution.

Section 6 of Article XVI provides: "The legislative assembly may provide for the election or appointment of such other county, township, precinct and municipal officers as public convenience may require and their terms of office shall be as prescribed by law, not in any case to exceed two years, except as in this Constitution otherwise provided." Respondent contends that a policeman is a municipal officer, and that, inasmuch as section 3 of the police commission bill declares that he shall hold office during good behavior, the whole bill is void. The position of the relator's counsel is found in these suggestions: (a) That a policeman is a state officer and not a municipal officer; (b) that, if he is not a state officer, he is simply a municipal employee, as distinguished from a municipal officer; and (c) that, if he is a municipal officer, the bill is not entirely void, but only that portion thereof fixing the duration of the term is unconstitutional, and the balance is good. We shall take these matters up in the foregoing order.

Is a policeman a state officer? The case of *Burch* v. *Hardwicke*, 30 Gratt. 24, 32 Am. Rep. 640, decided by the supreme court of Virginia in 1878, is confidently relied upon by the relator. In that case the mayor had removed the chief of police from office. The Constitution provided that "the mayor shall see that the duties of the various city officers are faithfully performed. He shall have power to investigate their acts, have access to all books and documents in their offices and may examine them and their subordinates on oath. He shall have power to suspend and remove such officers, whether they be elected or appointed," etc. The charter of the city of Lynchburg provided for a police department to be under the control

and management of police commissioners, consisting of the mayor, the president of the city council, and the judge of the corporation court. It was the duty of these commissioners to appoint a chief of police, whose term of office was fixed at two years. The plaintiff Hardwicke was appointed by the commission. The court, after referring to the supposed hardship and confusion that would result from overturning the "police commission" law, inasmuch as several large cities were being well policed by virtue of it, held that the "city officer" referred to in the Constitution was an officer like a superintendent of streets or of sewers, and not such an officer as a city treasurer. In reference to such officers as treasurer and others, the court said: "All these are generally mentioned as city officers, and they are even so designated in the Constitution, but no one has ever contended that either of them is in any manner subject to the control and removal of the mayor." We cannot follow the learned court in its determination that an officer like a city treasurer, expressly designated in the Constitution as a "city officer," is not a city officer. We shall refer to this subject again when we come to consider our own statutes. The Virginia court then goes on to hold that a chief of police and his subordinates are state officers, basing its conclusion seemingly on the proposition that many thousands of strangers enter a great city in the course of a year "in pursuit of business or pleasure," and that these must look to the police for protection. Neither can we follow the court to this last conclusion, to-wit, that patrolmen are technically state officers.

The supreme judicial court of Massachusetts, in the case of *Buttrick* v. *City of Lowell,* 1 Allen, 172, 79 Am. Dec. 721, said: "Police officers can in no sense be regarded as agents or servants of the city. Their duties are of a public nature. Their appointment is devolved on cities and towns by the Legislature as a convenient mode of exercising a function of government; but this does not render them liable for their unlawful and negligent acts. The detection and arrest of offenders, the preservation of the public peace, the enforcement of the laws, and other similar

powers and duties with which police officers and constables are intrusted are derived from the law, and not from the city or town under which they hold their appointment.''

In the case of *Everill* v. *Swan,* 17 Utah, 514, 55 Pac. 68, the supreme court of Utah said: ''Police officers are not mere servants of the municipal corporation. They are appointed under the laws of the state, by a board created for that purpose, to perform public service. While the jurisdiction of such officers is limited by certain boundaries, their service is not alone of local or corporate interest, but is important to the state at large as well, for the state has an interest in the peace and good order of each of its component parts. The duties which have been imposed upon them by the laws of the state they are bound to perform, independently of the corporation, such duties being of a public nature. The fact that the appointment of such officers was devolved upon the city or upon a board by the legislature does not deprive them of the character of public servants. Their appointment was so lodged simply as a convenient way to exercise a function of government. They are not therefore to be regarded as the mere agents or servants of the municipality, but as public or state officers.''

In so far as these cases declare that policemen are state officers, without in any manner limiting or explaining the expression, we do not agree with them. Policemen are certainly not state officers in the same sense that the attorney general or the state treasurer are state officers. The lay mind would rebel at such a conclusion, and no refinement of reasoning could make it logical. We think the courts whose decisions we have just referred to were unfortunate in the use of the term ''state officer,'' and that they intended simply to hold that a policeman is a public officer, in the sense that he has certain public duties to perform other than those strictly pertaining to the government of the municipality. With this latter determination we agree. If a policeman is strictly a state officer, the only way in which he could be removed would be by impeachment in accordance with the provisions of section 17 of Article

V of the Constitution, and Chapter 1 of Title III of the Penal Code.

The Constitution provides (Article VII, sec. 1) that the executive department of the state shall consist of the governor, lieutenant-governor, secretary of state, attorney general, state treasurer, state auditor, and superintendent of public instruction, each of whom shall hold his office for four years or until his successor is elected and qualified. Provision is also made (section 8) for the appointment by the governor of a state examiner, and also (section 7) for the nomination, and, by and with the consent of the senate, appointment, of all officers whose offices are established by the Constitution or which may be created by law, and whose appointment or election is not otherwise provided for. Except as provided in the foregoing sections, and as hereafter noted, we find in the Constitution no limitation upon the duration of the term of office of a state officer, and our attention has been called to none. The term of office of a justice of this court is six years (section 7, Article VIII, Constitution); of the clerk six years (section 9); of a district judge four years (section 12); of the clerk of the district court four years (section 18); of a county attorney two years (section 19); of a justice of the peace two years (section 20); of a county commissioner six years (section 4, Article XVI); of a county clerk, sheriff, treasurer, superintendent of schools, surveyor, assessor, coroner, and public administrator, two years (section 5); and of the commissioner of agriculture, labor, and industry, four years (section 1, Article XVIII). State senators are elected for four years, and representatives for two years (section 2, Article V). The foregoing, we think, includes all of the officers, state, county, and township, whose terms are fixed by the Constitution. Although six years is the longest term of office mentioned in the Constitution, we find no express declaration that a longer term may not be fixed by the legislature. The terms of the members of the first state board of education were fixed at two, three, four, and five years, respectively, and those of the railroad commissioners at

six years. We assume, then, that there is no limit, unless it be that the whole scheme of our system of government is in fundamental antagonism to life tenure of any sort of office, regardless of the duties attached thereto.

Policemen in this state all hold their places under city or town governments. We find no mention of the office in the Constitution. We have no state police as such. Respondent contends that a policeman is strictly a municipal officer, within the meaning of section 6, Article XVI, of the Constitution, *supra;* or, at any rate, that the office of policeman falls within the provisions of that section. There can be no doubt that a policeman is an "officer" not only within the ordinary meaning of the term in the street, but strictly and technically speaking also. Being attached to the municipality, it is within common knowledge that he has certain local duties to perform under the ordinances of all cities. A reference to any book of city ordinances will disclose the nature of such duties. But, in addition to these purely local duties, he has others, and these others are of a public and general nature pertaining to the observance and enforcement of the general laws of the state, principally the penal and criminal laws. We note a few instances: (a) A peace officer is a sheriff of a county, or his deputy, or a constable, marshal, or policeman of a township, city, or town. (Revised Codes, sec. 8924.) (b) Public offenses may be prevented by the intervention of the officers of justice: " * * * (2) By forming a police in cities and towns and by requiring their attendance in exposed places." (Revised Codes, sec. 8939.) (c) It is the duty of every police officer to prosecute persons who are offenders against the law. (Revised Codes, sec. 8426.) (d) Every police officer who shall refuse or neglect to perform any of the duties imposed upon him by the provisions of the chapter of the Penal Code, entitled "Gaming," is guilty of a misdemeanor. (Revised Codes, sec. 8428.) (e) It is the duty of all peace officers to prosecute or cause to be prosecuted all persons guilty of any violation of the so-called "wineroom law." (Revised Codes, sec. 8390.) (f) A warrant issued by a justice of the

supreme court or judge of a district court may be directed to any policeman in the state, and may be executed by such policeman in any part of the state. (Revised Codes, sec. 9040.) (g) Section 9041 of the Revised Codes provides that a warrant issued by any other magistrate may be directed to any policeman in the county, and may be executed by such officer in any part of the state. (h) Section 6362 of the Revised Codes provides that policemen may summon juries of inquest. (i) Section 3259, Revised Codes, provides that the council has power "to make regulations authorizing the police of a city or town to make arrests of persons charged with crime within the limits of the city or town, and within five miles thereof, and along the line of the water supply of the city or town." Many other provisions might be cited showing that policemen in this state are charged with general duties under the state laws in addition to their local duties. What, then, is the result? It appears that a policeman occupies a sort of dual position. He is, strictly speaking, neither a state officer, as such, nor an officer acting in a purely local capacity. He may be said to be *sui generis*, occupying a unique place of his own, and so we are inclined to regard him.

We are not permitted to declare this law unconstitutional if we can reconcile the conflicting statutes and decisions, and thus avoid such determination. "It is but a decent respect due to the wisdom, the integrity, and the patriotism of the legislative body by which any law is passed to presume in favor of its validity until its violation of the Constitution is proved beyond all reasonable doubt." (*Ogden* v. *Saunders*, 12 Wheat. 213, 6 L. Ed. 606; *Anderson* v. *Ritterbusch* (Okl.), 98 Pac. 1002.) Perhaps it is not out of place to notice at this time the argument of the appellant that policemen are mere employees or servants of the city. We cannot agree with this contention. To so hold would strip them as officers of all protection under the laws, and a result so grave should be avoided, if possible. Section 8180 of the Revised Codes provides that any person who attempts by means of any threat or violence to deter or

prevent an executive officer from performing any duty imposed upon such officer by law, or who knowingly resists, by the use of force or violence, such officer in the performance of his duty, is punishable by fine and imprisonment. Can it be doubted that one who resisted a policeman in the execution of a warrant issued by a justice of this court or a district judge, would be guilty of resisting an officer?

But it is said that because the legislature in 1899 passed the law creating fire departments in cities and towns (see Laws 1899, page 73), and provided therein that firemen should hold their places during good behavior, and should not be deemed officers of the municipal corporation, and thereafter, in 1907, prescribed the same tenure of office for policemen, it must be presumed to have intended to declare that policemen should not be deemed officers of the municipality. There are two answers to this suggestion: (1) That the duties of firemen are purely local; and (2) that the legislature, having once had its attention called to the matter of the legal *status* of such persons, could have declared that policemen were not municipal officers, had it so desired, assuming, in passing, that it had the power to do so without taking away their public functions. It seems to us that the fact that the legislature failed to declare that policemen should not be deemed officers of the municipal corporation is significant of the intention of that body to regard them as officers of some sort. We think policemen are not mere servants or employees of a city.

To recur, then, to the meaning of the words "municipal officers," found in section 6 of Article XVI of the Constitution. Section 3216 of the Revised Codes reads as follows: "The officers of a city of the first class consist of one mayor, two aldermen from each ward, one police judge, one city treasurer, who may be *ex officio* tax collector, who must be elected by the qualified electors of the city as hereinafter provided. There may also be appointed by the mayor, with the advice and consent of the council, one city attorney, one city clerk, one chief of police, one assessor, one street commissioner, one city jailer, one city sur-

veyor, and whenever a paid fire department is established in such city, a chief engineer and one or more assistant engineers, and any other officers necessary to carry out the provisions of this title. The city council may by ordinance prescribe the duties of all city officers and fix their compensation, subject to the limitations contained in this title." We find here the elective officers specifically mentioned and designated as the "officers of a city." This is an express declaration that they are city officers. It is then provided that there may also be appointed by the mayor, with the advice and consent of the council, one city attorney, one city clerk, one chief of police, one assessor, one street commissioner, one city jailer, one city surveyor, one chief engineer, and one or more assistant engineers of the fire department, "and any other officers necessary to carry out the provisions of this title." What is the *status* of a policeman? Respondent contends that the phrase "any other officer" applies to him. Our answer to this contention might be that the moment such "other officer" is appointed, if he be appointed a policeman, he falls within that class having state as well as local duties to perform, and therefore is not and cannot be a strictly municipal officer within the meaning of section 6 of Article XVI, *supra.*

The term "municipal officers" used in the Constitution means "city officers." The word "municipal" has its origin in the idea of a free town or city, and in its popular use is applied to cities, although in its general meaning it embodies the idea of local self-government, as distinguished from centralized government. " 'Municipal' may either refer to a town or a city." (*Sessions* v. *State,* 115 Ga. 18, 41 S. E. 259. See, also, 5 Words and Phrases Judicially Defined, p. 4618.) In the case of *Lebcher* v. *Commissioners of Custer County,* 9 Mont. 315, 23 Pac. 713, this court, speaking through the late Mr. Justice De Witt, treated a county as a municipal corporation. Section 3806 of the Revised Codes provides that public corporations are formed or organized for the government of a portion of the state. But section 6 of Article XVI of the Constitution expressly mentions "county" as well as "municipal" officers, so

that the word "municipal," as therein employed, is used in its restricted sense, meaning "city."

The only officers of a city of the first class actually *created* by the legislature are the mayor, two aldermen from each ward, a police judge, and a city treasurer. This is apparent from section 3220, Revised Codes, which provides that the city council has power to abolish any office the appointment to which is made by the mayor with the advice and consent of the council, and discharge any officer so appointed, "but no office created by this title must be abolished by the council." The city council may by ordinance consolidate any of the officers the appointment to which is made by the mayor with the advice and consent of the council, and may require any of the elected officers to perform any of the duties of an appointed officer whose office has been abolished. It will be seen from the foregoing that all of the offices which are to be filled by the mayor with the advice and consent of the council may be abolished, and the duties appertaining thereto added to those of the elective officers. But the elected officers stand in a class by themselves, and cannot be in any way affected by any action of the council.

But assuming, without deciding, that all of the officers, elective and appointive, mentioned in section 3216, are city officers, let us consider what those officers are. They are (1) the mayor, aldermen, police judge and city treasurer; and (2) such other officers as are appointed by the mayor, *with the advice and consent of the council.* An examination of the police commission bill discloses that policemen are to be appointed by the mayor from the eligible list without consulting the council; so that a policeman falls within neither class. We have not overlooked section 3258, Revised Codes, which reads as follows: "The duties and compensation of the street commissioners, chief of the fire department, city surveyor and other city officers not provided in this title may be prescribed by ordinance." But this somewhat loose expression does not alter our opinion as to the meaning of section 6, Article XVI of the Constitution, and section 3216, Revised Codes, as applied to policemen, in view

of the fact that street commissioners, chief engineer of the fire department, and city surveyor are all mentioned in section 3216, and their appointment must be confirmed by the council. The incumbents of offices not actually created by the legislature, but left to the judgment of the mayor and council to bring into existence may or may not be "city officers," within the meaning of the Constitution. This point, as hereinbefore stated, we do not decide. But it seems clear that, if any such appointee is a "city officer" within the meaning of the Constitution, he is such a one only as may be appointed with the advice and consent of the council; and his place may be abolished and his duties added to those of an elective officer, leaving the city government intact, with its full quota of officers. It is true that some of the incumbents of these places are popularly regarded as city officers, as, for instance, the chief of police and the city clerk, and they are in fact officers in the sense that they have official duties to perform in distinction to their private obligations, and are attached to the city government. However, as policemen belong to neither of the classes, the two-year period of limitation does not apply to their terms.

Another contention of the respondent is that section 14 of the police commission bill reserves to the mayor the right given him under subdivision 2, of section 4781, Political Code, to suspend, and, with the consent of the council, to remove, the relator from his place as policeman. Section 14 reads as follows: "All Acts and parts of Acts inconsistent with the provisions of this Act are hereby repealed, but nothing herein contained shall abridge any of the powers possessed by the mayor of any city or town under any other provision of law or any ordinance." To quote from the brief of respondent's counsel: "The very essence of this entire police bill, its design, its extent, and its purpose was to afford a tenure for life." And from the relator's brief we quote this: "The purpose of the bill was to put members of the police force under civil service rules, and insure them, when once finally appointed, a continuance in their positions during good behavior or until by age or disease they become permanently incapacitated to discharge

their duties or until removed for good cause after trial.'' We agree with relator's counsel that to give section 14 the interpretation contended for by the respondent would render the police commission bill in great part self-destructive. We are of opinion that section 14 took from the mayor the right to suspend or remove a policeman save as provided in the police commission bill itself.

It is said that the affidavit fails to allege that the council had not by ordinance abolished the office, but the allegation of the affidavit is that the relator was discharged by the respondent as mayor. This disposes of all questions properly presented for consideration.

The judgment of the district court of Lewis and Clark county is reversed, and the cause is remanded, with directions to overrule the demurrer to the affidavit or so-called complaint, and to vacate the order quashing the alternative writ of mandate and proceed in accordance with the views herein expressed.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.

Rehearing denied March 20, 1909.