ALEKSICH, Appellant, *v.* INDUSTRIAL ACCIDENT FUND, Respondent.

(No. 8427.)

(Submitted January 10, 1944.  Decided April 28, 1944.)

[151 Pac. 1016.]

*Messrs. Lester H.* and *Henry Loble* and *Mr. Albert H. Angstman,* for Appellant, submitted an original and a reply brief; *Mr. Lester H. Loble* and *Mr. Angstman* argued the cause orally.

*Mr. Myles J. Thomas,* for Respondent, submitted an original and a reply brief and argued the cause orally.

*Messrs. Wellington D. Rankin* and *Arthur P. Acher, amici curiae,* filed a brief in behalf of the Montana Police Protective Association and the Montana Federation of Labor, on Motion for Rehearing.

*Mr. William A. Brown, amicus curiae,* representing the Montana Highway Patrol, submitted an original and a reply brief in support of Motion for Rehearing.

HONORABLE BENJAMIN E. BERG, District Judge, sitting in place of Justice ADAIR, disqualified, delivered the opinion of the court.

For approximately ten years prior to and at the time of his death, Nick Aleksich was a policeman in the city of Butte, Montana. On February 28, 1937, he was to register for duty at the city jail at 2:50 o'clock P. M. The city jail faces Broadway and is on a corner formed by that street and an alley running north and south that connects with East Park street. Policemen commonly use this alley in traveling from East Park street to the city jail. It was the custom of Nick Aleksich to use this alley way in traveling to and from his work. About 2:20 o'clock in the afternoon of February 28, 1937, Aleksich was on East Park street with the evident intention of soon going through the alley and reporting to the city jail for his shift beginning at 2:50 o'clock P. M. At the time mentioned he was engaged in a con-

versation with one George Palles concerning the previous arrest of Palles and a fine he had paid for conducting a gambling game in his place of business. Both men were standing near the curb facing north and toward the end of their conversation one Ilija Martinovich, an insane person, shot and instantly killed Aleksich. Martinovich was suffering from delusions of persecution. In his warped mind Aleksich was a ''wizard,'' a man of great powers, who, by supernatural means, had caused him much trouble and misfortune. Since 1915 the city of Butte has been enrolled as an employer under Plan 3 of the Workmen's Compensation Act, (Rev. Codes 1935, section 2990 et seq.), but it has never paid any premiums to the Industrial Accident Fund for the protection of its policemen. Aleksich left surviving him a widow and two minor children and the widow, on her own and the children's behalf, filed claim for compensation under the provisions of the Workmen's Compensation Act.

The Industrial Accident Board, under the evidence before it, found that Aleksich, at the time of the homicide, was not engaged in any official duty for the city of Butte; that his death did not arise out of his employment and did not happen in the course of his employment; that the city of Butte had not elected to be bound by the Workmen's Compensation Act during the month of February, 1937, and that the Industrial Accident Fund of Montana had not received any premiums out of which compensation could be paid to widows of policemen killed by accident which might have arisen and happened in the course of the employment of such policemen, and denied the claim.

On appeal to the district court of Silver Bow county evidence, in addition to that contained in the record on appeal from the board's decision, was received. The district court found that the fatal injury Aleksich received arose out of and in the course of his employment as such public officer, thus being the opposite of the board's finding on that point. The court concluded that Nick Aleksich in his capacity of policeman was not engaged in or connected with one of the inherently hazardous occupations specified in or contemplated by sections 2848, 2849, 2850 and

2851 of the Revised Codes of 1935, and entered judgment dismissing the claim.

The claimant's and appellant's four specifications of error present but one question: Does the Workmen's Compensation Act afford protection to policemen? We are of the opinion that the law on this question has been determined by the previous decisions of this court, hereinafter cited. The argument of ▮ counsel for appellant is predicated on three general premises. 1. That the Workmen's Compensation Act as to public corporations and their *employees* is exclusive, compulsory and obligatory. 2. Public officers engaged in hazardous occupations are employees. 3. A city policeman is a public officer engaged in a hazardous occupation, and therefore an employee and entitled to the benefits of the Act.

The first premise, at least so far as a city and its employees are concerned, is correct. It is specifically so stated in section 2840, Revised Codes of 1935. It was so held in *City of Butte* v. *Industrial Accident Board,* 52 Mont. 75, 156 Pac. 130, and there further held that the provisions of the Act permitting employers to elect to come under its provisions (now sections 2841 and 2842, Rev. Codes, 1935) did not apply to public corporations; as to them and their employees, the Act is exclusive, compulsory and obligatory.

As to the second premise. Section 2863 defines the word "employee" and in so far as we are here concerned provides:

" 'Employee' and 'workman' are used synonymously and mean every person in this state, * * * who is in the service of an employer as defined by the preceding section, under any appointment or contract of hire, expressed or implied, oral or written, * * * and also including * * * all who are connected with or engaged in hazardous occupations of the elected and appointed paid public officers * * *."

The preceding section 2862 provides:

" 'Employer' means the state and each county, city and county, * * * and all public corporations * * * and every person * * * who has any person in service, in hazardous employment,

under any appointment or contract of hire, expressed or implied, oral or written, * * *."

Counsel for the respondent urges that public officers are not employees or workmen, and that it was not the intention of the legislature to include them within the Act. Certainly the language used in defining the term "employee" is not clear. The limiting language defining the word "employer" in section 2862 embraces only the relationship of master and servant. It includes only employees under appointment or contract of hire. The word "hire" is defined by Webster's New International Dictionary to mean "to engage or purchase labor or services of (anyone) for compensation or wages; as, to hire a servant, an agent or an advocate." The word "hire" denotes the relationship of master and servant arising out of a contract, expressed or implied, and we must assume that the legislature used the word in its ordinary meaning. Officers are not servants. They are neither hired nor discharged at the will of anyone. Their compensation is a salary fixed by law and can be increased or decreased only by legislative enactment. Ordinarily they hold their office during a fixed term. They are neither under the control, direction or command of a superior, but, on the contrary, are invested with a portion of the sovereign functions of government to be exercised for the benefit of the public. Mr. Meacham, in his work on Public Officers, section 1, says: "A public office is the right, authority and duty, created and conferred by law, by which for a given period, either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government, to be exercised by him for the benefit of the public." (*Walker* v. *Rich,* 79 Cal. App. 139, 249 Pac. 56; *State* v. *Bond,* 94 W. Va. 255, 118 S. E. 276.) Unless the statute specifically includes public officers it is generally held, under statutes binding the application to employees under an appointment or contract of hire, a public officer is not included. (*Parker* v. *Travelers' Ins. Co.,* 174 Ga. 525, 163 S. E. 159, 81 A. L. R. 472; *Shelmadine* v. *City of Elkhart,* 75 Ind. App. 493, 122 N. E. 878; *Werner* v.

*Industrial Comm.,* 212 Wis. 76, 248 N. W. 793; *City of Chicago* v. *Industrial Comm.,* 291 Ill. 23, 125 N. E. 705.) On several occasions this court has held city policemen to be public officers. (*State ex rel. Anderson* v. *Fousek,* 91 Mont. 448, 8 Pac. (2d) 791, 84 A. L. R. 303; *State ex rel. O'Brien* v. *Mayor of Butte,* 54 Mont. 533, 172 Pac. 134; *State ex rel. Quintin* v. *Edwards,* 38 Mont. 250, 99 Pac. 940.)

If the provisions of section 2863 went no further than to say " 'Employee' and 'workman' are used synonymously and mean every person in this state * * * who is in the service of an employer as defined in the preceding section, under any appointment or contract of hire * * *'' the interpretation would be simple, since both sections 2862 and 2863 would be consistent and limit their application to a relationship between employer and employee arising out of contract. It is the language added to the above quoted portion of section 2863, namely, "and also including * * * all who are connected with or engaged in hazardous occupations of the elected and appointed paid public officers * * *'' that is confusing. It would have been difficult for the legislature to have chosen more ambiguous language. Certainly this language is pregnant with the view that public officers were not intended to be included but only persons under any appointment or contract of hire, who are connected with or engaged in hazardous occupations of the elected and paid public officers. Then, too, there is the suggestion that if the legislature meant to include public officers it would have simply said, "Including appointed and paid public officers." But we are of the opinion that the construction placed on these same statutory provisions in the case of *Moore* v. *Industrial Accident Fund,* 80 Mont. 136, 259 Pac. 825 is correct and determines the question. The court there said that, under the provisions of section 2863, referred to in the opinion as section 3 of Chapter 121 of the Session Laws of 1925, "elected and appointed paid public officers, who are connected with or engaged in hazardous occupations, are included as workmen and are entitled to the protection of the Act.'' To arrive at this conclusion, the court, in effect,

transposed the language used in the statute to read, *including all of the elected and appointed paid public officers who are connected with or engaged in hazardous occupations,* and must necessarily have reached the conclusion that the language "under any appointment or contract of hire, * * *" did not limit the phrase "including * * * all who are connected with or engaged in hazardous occupations of the elected and paid public officers * * *." This interpretation is logical, for if the clause under discussion was interpreted as so limited and to mean *including all, under any appointment or contract of hire, who are connected with or engaged in hazardous occupations of the elected and appointed paid public officers,* no effect would be given to the language, since such persons would fall under the general definition of employees immediately preceding the clause under discussion. We are of the opinion that the previous decision of this court (*Moore* v. *Industrial Accident Fund,* supra) holding that elected and appointed paid public officers, who are connected with or engaged in hazardous occupations, are included as workmen and entitled to the protection of the Act, properly interprets the intention of the legislature.

Now, coming to the third premise: "A city policeman is a public officer engaged in a hazardous occupation, and therefore an employee and entitled to the benefits of the Act." A public officer to come within the definition of "employee," as defined by section 2863 must meet three requirements. 1. He must be an elected or appointed public officer. 2. He must be a paid public officer. 3. He must be engaged in or connected with an inherently hazardous occupation contemplated by the Act. Aleksich meets the first two requirements, but was he engaged in or connected with an inherently hazardous occupation within the meaning of the Act? Admittedly the occupation of policeman is not included in the occupations defined by the Act to be inherently hazardous, nor is it of the same general character as any of the occupations defined by the Act to be hazardous. Counsel for claimant concede this, but argue that such occupation is, as a matter of fact and of common knowledge, inherently hazardous,

and therefore within the scope of the Act, particularly in view of sections 2847 and 2852, Revised Codes of 1935. Sections 2848 to 2851, both inclusive, enumerate those occupations designated as inherently hazardous and in their respective order classify them as construction work; operation of certain industrial plants; factories using power-driven machinery; and miscellaneous work. Section 2847 is introductory to sections 2848 to 2851, inclusive, and expresses the intention of the legislature in designating the occupations mentioned in them. Section 2847 provides:

"This Act is intended to apply to all inherently hazardous works and occupations within this state, and it is the intention to embrace all thereof in the following four sections, and the works and occupations enumerated in said sections are hereby declared to be hazardous, and any employer having any workmen engaged in any of the hazardous works or occupations * * * listed shall be considered as an employer engaged in hazardous works and occupations as to all his employees."

By this section the legislature has expressly said that it was its intention to include in the four sections mentioned all inherently hazardous works and occupations.

Section 2852 provides:

"If there be or arise any hazardous occupation or work other than hereinbefore enumerated, it shall come under this Act and its terms, conditions, and provisions as fully and completely as if hereinbefore enumerated."

The previous decisions of this court hold that under the doctrine of *ejusdem generis* this latter section expands the scope of the Act only to hazardous occupations of the same general character as those enumerated in it. (*Moore* v. *Industrial Accident Fund,* supra; *Page* v. *New York Realty Co.,* 59 Mont. 305, 196 Pac. 871, 875.) In *Page* v. *New York Realty Co.* the court had before it the application of the Act to one employed to operate a passenger elevator. The operation of a passenger elevator was not then one of the hazardous occupations enumerated in the Act. The court held the employment was not

hazardous as defined by the Act, nor *ejusdem generis*. It expressed its opinion that "whether the employment of a person or any accident comes within the provisions of the Act is a question of law rather than one of fact." And in *Moore* v. *Industrial Accident Fund,* supra, the court had under consideration the claim of the widow of a county commissioner killed in an automobile accident while returning from a trip inspecting roads. In this case, as in the case at bar, the court was called upon to construe the Act as applicable to a paid public officer, and to interpret sections 2847 to 2852, both inclusive, and section 2863, therein referred to as section 3 of Chapter 121 of the Session Laws of 1925. The court approved and followed the decision in *Page* v. *New York Realty Co.,* and said of section 2852:

"Respecting the effect of this section, this court, speaking through Mr. Justice Galen, in *Page* v. *New York Realty Co.,* 59 Mont. 305, 196 Pac. 871, observed: 'The Legislature in effect declared: We have enumerated all the hazardous occupations we can think of, but should there be any omitted from consideration and not specified, or new employments arise of like hazardous character, then they shall be considered as included.' The court further held that the section had reference only to such employments or industries, other than those specifically named, as are of the same general character as those then existing or which might subsequently arise, following the rule of *ejusdem generis.*"

As to section 2863, referred to in the opinion as section 3 of Chapter 121, Session Laws of 1925, the court said:

"The provisions of section 3 of Chapter 121, supra, went no further than to bring paid public officers, who are connected with or are engaged in hazardous occupations, within the protection of the Act. It must be held that a hazardous occupation, as contemplated by the Compensation Act, is limited to those occupations enumerated in the Act and to others of the same general character." And the court further said: "It is true that the commissioners, collectively, or through one of their number deputed for that purpose, may 'personally superintend and effectively direct the work of construction and repair upon

highways' (*State* v. *Story*, 53 Mont. 573, 185 Pac. 748), but it cannot be said, as a matter of law, that any of these activities is inherently hazardous.''

But counsel for the appellant urged upon us that section 2852 expresses the intention of the legislature to be that the hazardous character of every occupation not enumerated in the Act should in each instance be determined as a question of fact. That is to say, the doctrine of *ejusdem generis* is not applicable in the interpretation of this section. If the suggested interpretation be correct, then the Industrial Accident Board may find as a matter of fact that any occupation, industry or business is hazardous, though it be not enumerated in the Act, nor *ejusdem generis*, and would therefore be inserting into the Act that which has been omitted, which it is without power to do, and which is prohibited by section 10519, Revised Codes. Section 10520 provides: ''In the construction of a statute the intention of the legislature, and in the construction of the instrument the intention of the parties, is to be pursued if possible; and when a general or particular provision are inconsistent, the latter is paramount to the former. So a particular intent will control a general one that is inconsistent with it.''

To ascertain the intention of the legislature the Act must be read as a whole and; where possible, conflicting and ambiguous parts made to harmonize. And where one part of a statute deals with a subject in general and comprehensive terms, while another part deals with it in a more minute and definite way, the two parts should be read together and, if possible, harmonized with a view to giving effect to a consistent legislative policy. (*Stadler* v. *City of Helena*, 46 Mont. 128, 127 Pac. 454; *City of Butte* v. *Industrial Accident Board*, 52 Mont. 75, 156 Pac. 130.) Section 2841, as amended by Chapter 119 of the Session Laws of 1939, and by Chapter 135 of the Session Laws of 1941, provides: ''Every employer engaged in the industries, works, occupations, or employments in this Act specified as 'hazardous', shall on or before the first day of July, 1939 * * * elect whether he will be bound by either of the compensation

plans mentioned in this Act." And section 2852 must be read in connection with this section and with sections 2847 to 2852, both inclusive. Under the provisions of section 2841 as amended, an employer is required to elect to come under the Act only if engaged in an industry specified in the Act as hazardous. The word "specified" means "to mention or name in a specific or explicit manner; to tell or state precisely or in detail." (Webster's International Dictionary.) The only specification of hazardous works and occupations is the enumeration thereof in sections 2848 to 2851, both inclusive. And if we give to section 2841 a literal construction, no effect would be given to section 2852. Conversely, if we give to section 2852 the construction sought by appellant, then the scope of the Act would be rendered so uncertain that no employer or employee could ascertain if his business or occupation is included in the Act, and would be ignoring the provisions of section 10520, supra. Under such a construction there would be no standard to guide the board, the court or anyone else as to what industries and occupations would be hazardous. Whether an employer whose business is not enumerated in the Act as hazardous nor *ejusdem generis* would be entitled to the common law defenses in a suit by an employee for damages for injuries received in an accident arising out of and in the course of his employment, would be a question of fact for the jury. If the jury found that the occupation was hazardous, and therefore determined it was included within the Act, the employer would be denied the benefit of the common law defenses; and conversely, if the jury found the occupation not to be hazardous and not included within the Act, then he would be accorded the common law defenses. One jury might find the business or industry to be hazardous and within the Act, and in a subsequent suit another jury find the same business not to be hazardous and not within the Act. It is apparent that the jury, in determining whether an industry or business came within the scope of the Act and was included therein, would be passing upon a question of law, and to the jury would thus be delegated the power to write into the Act that which is not

there. We do not believe it was the intention of the legislature to lay a trap for the citizens. On this point our court, in *Bruce* v. *McAdoo,* 65 Mont. 275, 211 Pac. 772, 776, said: "These independent rights of action are not directly or impliedly repealed by the Compensation Act, and only such causes of action are affected thereby as come within its specific provisions."

The doctrine of *ejusdem generis* is a well known rule of construction to aid in ascertaining the meaning of statutes and other written instruments, the doctrine being that where an enumeration of specific things is followed by some more general word or phrase, such general phrase is to be held to refer to things of the same kind as those enumerated. "The rule is based on the obvious reason that if the legislature had intended the general words to be used in their unrestricted sense they would have made no mention of the particular classes." (59 C. J. 982.)

We think we have here clearly pointed out the uncertainties and impossible situations that would arise had the court not invoked the doctrine in the interpretation of these various sections of the Act. We are, therefore, of the opinion that the interpretation placed upon the various sections in *Page* v. *New York Realty Co.,* supra, and *Moore* v. *Industrial Accident Fund,* supra, is correct and that they control here.

It is significant that after the decision in *Page* v. *New York Realty Co.,* supra, the legslature amended the Act to include operators of passenger elevators, and although the case of *Moore* v. *Industrial Accident Fund,* supra, was decided in 1927, the Act has not since been amended to change the law in regard to public officers.

Counsel for the appellant further urges that the court has failed to give effect to the last portion of section 2847, which provides: "* * * and any employer having any workman engaged in any of the hazardous works or occupations herein listed shall be considered as an employer engaged in hazardous works and occupations as to all his employees." But since a public officer not engaged in a hazardous occupation enumerated in

the Act nor *ejusdem generis* is not an employee, he would not fall within this catch-all phrase.

On its cross-appeal defendant assigns error to the district court as to the finding that the injury Aleksich received arose out of and in the course of his employment as such public officer, asserting that the evidence is insufficient to sustain it. Since the decision of the lower court must be affirmed for the reasons herein stated, the question raised on the cross-appeal now becomes moot and a determination thereof unnecessary.

We hold, therefore, that the Act applies to paid public officers ▇▇ only when their duties require the performance of occupations enumerated in the Act as inherently hazardous, or of occupations of the same kind as those enumerated. Since the occupation of policeman or that of peace officers is not by the Act designated as inherently hazardous and no other occupations similar to theirs are therein enumerated as inherently hazardous, no cause for relief exists.

The judgment is affirmed.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES MORRIS and ANDERSON concur.

MR. JUSTICE ERICKSON:

I dissent. I agree with the majority's interpretation of the holding in *Moore* v. *Industrial Accident Fund,* 80 Mont. 136, 259 Pac. 825, as it touches upon the provisions of section 2863. I cannot agree, however, with the decision in *Moore* v. *Industrial Accident Fund,* supra, on the question of *ejusdem generis* as applied to the statutes before us and neither can I agree with the majority's holding on that question. If there were no statutory definition of a hazardous occupation any jurist would need considerable temerity to go before the public and urge that the occupation of police officer is not an inherently dangerous one under any of the ordinary rules. Were it not for section 2852, however, I probably should be inclined to agree with the majority's construction of the provisions of Chapter 256, section 2847 et seq. For emphasis let me repeat the provisions of section 2852. They are: "If there be or arise any hazardous occupation

or work other than hereinbefore enumerated, it shall come under this Act and its terms, conditions, and provisions as fully and completely as if hereinbefore enumerated." That language is clear and explicit. It negatives conclusively any intention that the preceding sections were intended to name all the hazardous occupations to the exclusion of any of a type not generally mentioned. Since the decision in *Moore* v. *Industrial Accident Fund,* supra, and *Page* v. *New York Realty Co.,* 59 Mont. 305, 196 Pac. 871, this court handed down the decision in *Burk* v. *Montana Power Co.,* 79 Mont. 52, 255 Pac. 337, 338. There, after enumerating certain hazardous occupations in which the employment of minors was prohibited, the statute also prohibited their employment "in any occupation not herein enumerated which is known to be dangerous." In the statute before us the language is "other than hereinbefore enumerated." I can see no difference between the effect of these two ways of phrasing exactly the same idea. In the *Burk Case* the same argument was made as here that the rule of *ejusdem generis* applied. In disposing of the argument the court said: "Defendant asserts that the rule of *ejusdem generis* must be applied in construing this statute, and the occupation in which the plaintiff was employed, not being of the same kind and character as those specifically enumerated, does not come within the purview of the general clause. The rule *ejusdem generis is only a rule intended to aid the court in arriving at the intention of the Legislature* and cannot be invoked where its application would result in a disregard of plain and unambiguous language used in the statute. In this instance to apply the rule would be to refuse to give to the words 'not herein enumerated' any effect. They would be surplusage, and the general clause would have the same meaning as if it read, 'or in any occupation known to be dangerous.' "

What is said in the *Burk Case* applies exactly to this case and the majority has made no attempt to distinguish the two cases. There are cases without number holding that the rule of *ejusdem generis* may be applied only where there is ambiguity. (See generally, 28 C. J. S., Ejidos or Exidos—Ejusdem, p. 1050;

Sutherland Statutory Construction, sec. 437.) To me it seems clear that section 2852 created a separate, independent class of occupations which the legislature intended to be hazardous within the statute. The language is much stronger in section 2852 than in that in the section before the court in the *Burk Case.* Not only does the language of the section attempt to declare all occupations that are inherently hazardous to come within the provisions of the Act, even though not named, but it went further and said that any new occupations which might arise which are inherently hazardous should also be included. There are two other reasons why the doctrine of *ejusdem generis* should not be applied to this statute. In the first place, the general rule is that the doctrine will not apply where the matters listed in the general statute are of widely divergent types and in the second place, the doctrine is ordinarily applied only to penal statutes such as the one found in the *Burk Case.* (See 59 C. J. 982.)

In *Dosen* v. *East Butte Copper Mining Co.*, 78 Mont., 579, 254 Pac. 880, 886, we said this: "In construing a statute the court must endeavor to give meaning to every word, phrase, sentence, and section, if it is possible to do so, and will never hold any part of it inoperative, if it is reasonably possible to reach any other conclusion." By the construction this court places on section 2852 this latter rule is violated. To apply the rule of *ejusdem generis* is to refuse to give to the words "other than hereinbefore enumerated" any effect. As a matter of fact to apply the doctrine is to eliminate section 2852 entirely from the statutes. To my mind the occupation of the deceased was hazardous within the Workmen's Compensation Act.

The majority is considerably disturbed over the fact that under the construction I place on the statute too much discretion would be left to the Industrial Accident Board and to the court in the determination of what occupations are hazardous and which are not. A sufficient answer to this suggestion seems to me to be that in many, if not most states the statutes do not attempt to define in any way a hazardous occupation but the

Act merely provides that it is to cover all hazardous occupations, yet the courts of other jurisdictions apparently have no difficulty on the score which so much concerns the majority. (See Generally, 71 C. J. 359.)

The majority has also overlooked the provisions of section 2964, Revised Codes, which provides: ''Whenever this Act or any part or section thereof [referring to the Workmen's Compensation Act] is interpreted by a court, it shall be liberally construed by such court.'' This court in a great many cases has construed this provision to mean that the liberal construction called for is one in favor of the injured workman and every presumption is indulged to bring the claimant within the provisions of the Act. (See Generally, 71 C. J. 341; *Dosen* v. *East Butte Copper Mining Co.,* supra; *Shea* v. *North Butte Mining Co.,* 55 Mont. 522, 179 Pac. 499; *Cunningham* v. *Northwestern Imp. Co.,* 44 Mont. 180, 119 Pac. 554; *Lewis & Clark County* v. *Industrial Accident Board,* 52 Mont. 6, 155 Pac. 268, L. R. A. 1916D, 628.)

I should like to point out one thing further in which I feel the majority is in error in its decision. Under section 2840, Revised Codes, the city has no election but must come under Plan 3 of the Workmen's Compensation Act. (See *City of Butte* v. *Industrial Accident Board,* 52 Mont. 75, 156 Pac. 130.) Section 2862 provides: '' 'Employer' means the state and each county, city and county, * * * who has any person in service, in hazardous employment, under any appointment or contract of hire, * * *.'' Section 2863 defines ''employee' 'and ''workman'' and provides that those words ''mean every person in this state * * * under any appointment * * * and all who are connected with or engaged in hazardous occupations of the elected and appointed paid public officers * * *.'' Under section 2847 the law provides that ''any employer having any workman engaged in any of the hazardous works or occupations herein listed shall be considered as an employer engaged in hazardous works and occupations as to all his employees.'' That section applies here. Under the latter provision we need not concern ourselves with

whether a police officer is engaged in a hazardous occupation. Other employees and appointees of the city of Butte are. It is admitted in the argument that the city of Butte was covered by Plan 3 and under section 2847 all of its employees are covered by the Act. In *Williams* v. *Brownfield-Canty Carpet Co.*, 95 Mont. 364, 26 Pac. (2d) 980, 982, we said: "It is not necessary, however, for us to engage in an elaborate discussion of this matter [whether the claimant was engaged in a hazardous occupation] in the present case, because it appears that there is no question but what Brownfield-Canty Carpet Company, employer, was under the Act for part of its employees, and, as we have said, if it was under it for part of its employees, it was under it for all of them."

I think the judgment should be reversed and the cause remanded with direction to enter judgment for plaintiff.

Rehearing denied October 16, 1944.