STATE, APPELLANT, *v.* ROCKY MOUNTAIN ELEVATOR CO., RESPONDENT.

(No. 3,773.)

(Submitted June 22, 1916.  Decided July 6, 1916.)

[158 Pac. 818.]

*Criminal Law — Monopolies — Unfair Discrimination—Buying Commodities—Evidence—Insufficiency—Appeal and Error—Presumptions—Right Result—Wrong Reason—Constitutional Law—Validity of Statute—Review.*

Appeal and Error—Presumptions.
1.  In entering upon its investigation of an appeal, the supreme court indulges the presumption that the ruling of the trial court is correct; and if its order directing a verdict of not guilty can be justified upon any ground, it will be upheld.

Same—Right Result—Wrong Reason.
2.  If the right result was reached by the trial court, it is immaterial that an erroneous reason was assigned for it.

Constitutional Law—Review—Validity of Statute.
3.  The validity of a statute will not be determined on appeal unless such determination is necessary to a decision of the particular case.

[As to caution of courts in respect to declaring legislative Acts to be invalid, see note in 48 Am. Dec. 269.]

Criminal Law—Unfair Discrimination—Buying Commodities—Evidence—Insufficiency.
4.  Evidence in a prosecution for unfair discrimination in buying wheat, contrary to the provisions of Chapter 8, Laws of 1913, *held* insufficient for a conviction of defendant; the court's order in directing a verdict of acquittal was therefore correct.

*Appeal from District Court, Teton County; J. B. Leslie, Judge.*

CRIMINAL PROCEEDINGS by the State against the Rocky Mountain Elevator Company for unfair discrimination under Chapter 8, Laws of 1913. From an order directing a verdict of not guilty, the State appeals. Affirmed.

*Mr. J. B. Poindexter,* Attorney General, *Messrs. Norris & Hurd* and *Mr. Phil. I. Cole,* for Appellant, submitted a brief; *Mr. Chas. S. Wagner,* Assistant Attorney General, argued the cause orally.

The information does not state facts sufficient to charge the defendant with an offense against the laws of the state of Montana.

The offense with which the defendant is charged is purely statutory. Nothing like it was known at the common law. Under such circumstances the statute contains all the elements of the offense necessary to be charged in the indictment. So it is held that an indictment or information for a statutory offense which charges the defendant with the commission of such offense in the language of the statute is sufficient. (*State* v. *Brown,* 38 Mont. 309, 99 Pac. 954; *Commonwealth* v. *Dewhirst,* 190 Mass. 293, 76 N. E. 1052; *State* v. *Johnson,* 93 Mo. 317, 6 S. W. 77; *People* v. *Knowlton,* 122 Cal. 357, 55 Pac. 141; *Bartley* v. *State,* 53 Neb. 310, 73 N. W. 744; *Bolen* v. *People,* 184 Ill. 338, 56 N. E. 408; *People* v. *Corbalis,* 86 App. Div. 531, 83 N. Y. Supp. 782; *Latshaw* v. *State,* 156 Ind. 194, 59 N. E. 471; *Johnson* v. *State* (Tex.), 55 S. W. 818; *State* v. *Reilly,* 108 Iowa, 735, 78 N. W. 680; *State* v. *Pennington,* 41 W. Va. 599, 23 S. E. 918; *State* v. *Seeley,* 65 Kan. 185, 69 Pac. 163; *Stevens* v. *State,* 89 Md. 669, 43 Atl. 929; *State* v. *Sonier,* 107 La. 794, 32 South. 175; *State* v. *Williamson,* 22 Utah, 248, 83 Am. St. Rep. 780, 62 Pac. 1022.) So it has been held that where the words of an anti-trust statute are descriptive of the offense, which is purely a statutory one, an indictment which follows

the language of the statute is sufficient. (*Commonwealth* v. *Grinstead,* 108 Ky. 59, 55 S. W. 720, 57 S. W. 471.) It is sufficient, moreover, if the offense is set forth substantially though not in the exact words of the statute. (Sec. 9155, Rev. Codes; *Territory* v. *Corbett,* 3 Mont. 50; *State* v. *Conway,* 38 Mont. 42, 98 Pac. 654; *Smith* v. *State,* 72 Neb. 345, 100 N. W. 806; *State* v. *Barnett,* 3 Kan. 250, 87 Am. Dec. 471; *Chandler* v. *State,* 141 Ind. 106, 39 N. E. 444; *Schley* v. *State,* 48 Fla. 53, 37 South. 518; *Smith* v. *Territory,* 11 Okl. 656, 69 Pac. 803.)

In the second ground of its motion for a directed verdict defendant objects to Chapter 8, Laws of 1913, for the reason that it contains the same wording as Chapter 7 in regard to the equalization of the distance and freight rates. Chapter 7 deals with selling and Chapter 8 with buying, and is incapable of legal construction and therefore void. Statutes similar to Chapter 7, are found in Minnesota, Nebraska and South Dakota, and have been held valid in those states. (*State* v. *Drayton,* 82 Neb. 254, 130 Am. St. Rep. 671, 23 L. R. A. (n. s.) 287, 117 N. W. 768; *State* v. *Central Lumber Co.,* 24 S. D. 136, 42 L. R. A. (n. s.) 804, 123 N. W. 504; *State* v. *Standard Oil Co.,* 111 Minn. 85, 126 N. W. 527; *State* v. *Bridgman & Russell Co.,* 117 Minn. 186, Ann. Cas. 1913D, 41, 134 N. W. 496; *Central L. Co.* v. *South Dakota,* 226 U. S. 157, 57 L. Ed. 164, 33 Sup. Ct. Rep. 66.) A statute similar to Chapter 8 is found in Iowa, and in the case of *State* v. *Fairmont Creamery Co.,* 153 Iowa, 702, 42 L. R. A. (n. s.) 821, 133 N. W. 895, the supreme court of that state held such statute constitutional.

*Messrs. Freeman & Thelen,* for Respondent, submitted a brief; *Mr. Jas. W. Freeman* argued the cause orally.

In order to give any meaning to Chapter 8, so as to render it capable of construction and interpretation, there should have been a phrase substantially as follows: "After making due allowance in the actual cost of transportation from the point where the same is purchased to the market where it is sold or intended to be sold, *etc.*" The above is substantially the

phraseology to be found in Article V, Chapter 45 of the Revised Statutes of Nebraska, 1913. Upon examination of the statutes in every state which we have been able to find on this subject, including the states of South Dakota, Nebraska, Minnesota and Iowa, all of the laws in those states are to be found with a provision similar to the one set forth hereinabove, as being from the state of Nebraska, and each and every one use the phrase "after equalizing the distance from the point of purchase, *etc.,*" instead of the phrase "point of production, manufacture or distribution," although all of the states that have statutes similar to the one found in Chapter 7 of our law use either the same or words importing the same meaning as those used in section 1 of Chapter 7.

Where the same word is used in different parts of the statute, the presumption obtains that it was used in the same sense throughout, and where its meaning in one instance is clear, such meaning will attach to it elsewhere. (*National Mines Co.* v. *Sixth Judicial District Court,* 34 Nev. 67, 116 Pac. 996; *Gillen* v. *Ocean Accident etc. Corp.,* 215 Mass. 96, L. R. A. 1916A, 371, 102 N. E. 346; *Ryan* v. *State,* 174 Ind. 468, Ann. Cas. 1912D, 1341, 92 N. E. 340.) With reference to the construction of penal statutes such as this is, we find the rule to be that penal statutes must be construed strictly according to the intention of the legislature as described by the import of the words, and when not remedial are not to be extended by equitable principles. (*Melody* v. *Reab,* 4 Mass. 471; *Hosmer* v. *Sargent,* 8 Allen (Mass.), 97, 85 Am. Dec. 683.) "A penal statute must be strictly construed and cannot be extended to cases not included within the clear import of its language." (*Greek-Am. Produce Co.* v. *Illinois Cent. Ry. Co.,* 4 Ala. App. 377, 58 South. 994; *Price* v. *Board of Commissioners,* 22 Colo. App. 315, 124 Pac. 353.) If ambiguous, it will be construed more strongly in favor of the defendant than it would if the statute were remedial. (*Bolles* v. *Outing Co.,* 175 U. S. 262, 44 L. Ed. 156, 20 Sup. Ct. Rep. 94.)

The following is a list of decisions interpreting statutes relating to unfair discrimination in buying and selling: *State* v. *Fairmont Creamery Co.*, 153 Iowa, 702, 42 L. R. A. (n. s.) 821, 133 N. W. 895; *State* v. *Drayton*, 82 Neb. 254, 130 Am. St. Rep. 671, 23 L. R. A. (n. s.) 1287, 117 N. W. 768; *State* v. *Bridgeman & R. Co.*, 117 Minn. 186, Ann. Cas. 1913D, 41, 134 N. W. 496; *State* v. *Central Lumber Co.*, 24 S. D. 136, 42 L. R. A. (n. s.) 804, 123 N. W. 507.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

The Rocky Mountain Elevator Company was charged by information with unfair discrimination under section 1, Chapter 8, Laws of 1913. Upon the issues raised by a plea of not guilty, the cause was brought to trial and the state introduced its evidence and rested. At the instance of the defendant the court directed the jury to return a verdict of not guilty, and from that order the state appealed.

The charging part of the information follows: ''The above-named defendant being then and there a corporation doing business in the state of Montana, and engaged in the buying and selling of grain, a commodity in general use, did intentionally for the purpose of destroying the competition of the Farmers' Co-operative Elevator Company, a corporation, then and there a regularly established dealer in grain, discriminate between different sections, communities, and parts of this state, by buying wheat at a higher price or rate, at Chouteau, in the county of Teton, Montana, than said defendant paid for the same commodity in other sections of the state, *viz.*, at Dutton, Montana, after equalizing the distance from the point of production, manufacture, or distribution, and freight rates therefrom.''

The motion for a directed verdict specified three grounds:

(1) The information does not state facts sufficient to constitute an offense.

(2) The statute does not define a public offense.

(3) The evidence is insufficient to prove that a public offense has been committed.

We enter upon our investigation indulging the presumption [1] that the ruling of the trial court is correct, and therefore, if the order can be justified upon any ground of the motion, it will be upheld. (*Marron* v. *Great Northern Ry. Co.,* 46 Mont. 593, 129 Pac. 1055.) If the right result was reached, it is immaterial whether the right reason was assigned for it. (*City* [2] *of Butte* v. *Goodwin,* 47 Mont. 155, Ann. Cas. 1914C, 1012, 134 Pac. 670.)

This court, acting in harmony with the general rule observed [3] by appellate courts, will not determine the validity of a statute unless such determination is necessary to a decision of the particular case, and this for the reason that every statute is presumed to be valid and courts are not created to decide moot questions.

The evidence introduced by the prosecution is altogether in- [4] sufficient to show any violation of the statute. Chapter 8, Laws of 1913, seeks to define and provide punishment for unfair discrimination in *buying*. Unfair discrimination in *selling* is defined in Chapter 7, enacted at the same session. If a crime is defined in Chapter 8, the definition is to be found in section 1, which provides that any person, firm or corporation engaged in buying, selling, producing, manufacturing or distributing any commodity in general use, who intentionally, for the purpose of destroying or preventing competition, shall discriminate between different persons or communities, or parts of the state, by purchasing such commodity at a higher price in one part of the state than such person, firm or corporation pays for the same commodity in another section, "after equalizing the distance from the point of production, manufacture, or distribution and freight rates therefrom," shall be guilty of unfair discrimination. It will be observed at once that it was not the intention of the legislature that it should be a crime to pay a higher price for a commodity in one part of the state than in another, even after making allowance for the difference in market price as

affected by different freight rates. It is only when the discriminatory rate is paid intentionally for the purpose of stifling existent competition or preventing a new competitor entering the same commercial field, that the act of paying the higher price is denounced as a crime. Before it can be said that a crime has been committed under this statute, there must be some evidence from which the wrongful intention can be inferred. The charge here made is that it was the purpose of the defendant to destroy the competition of the Farmers' Co-operative Elevator Company at Chouteau.

The evidence introduced by the prosecution discloses that in January, 1915, the defendant, a Minnesota corporation, was engaged in buying wheat in Teton county; that it owned the only elevator at Dutton; that it owned an elevator at Chouteau; that the Farmers' Co-operative Elevator Company, a domestic corporation, owned an elevator at Chouteau and was engaged in buying wheat at that point; that on January 19, I. N. Caskey, a farmer living between Dutton and Chouteau, sold a load of wheat to the defendant at Dutton and another load of the same wheat to defendant at Chouteau; that the wheat sold at Dutton was graded by defendant as No. 3, docked six pounds per bushel, and brought $1.11 per bushel; that the wheat of identical character and quality sold at Chouteau was graded No. 1 by defendant, docked one pound per bushel, and brought $1.26 per bushel; that Dutton is situated on a main line of railway, and Chouteau on a branch line; that Dutton enjoys an advantage in freight rates of one cent per hundredweight over Chouteau to coast and Minnesota market points, and an advantage of 1½ cents per hundredweight to Great Falls.

This is all of the evidence so far as substance is concerned. It fails to make out a case in this: (a) It fails to show, or even suggest, that the Farmers' Co-operative Elevator Company was a competitor of the defendant at Chouteau. So far as this record goes, the two concerns may have been acting in perfect accord— even by agreement. (b) It fails to show, or even intimate, that the price paid at Chouteau was more than the fair market price

for the grain.   (c) It fails to disclose that the price paid by the defendant at Chouteau was more than the Farmers' Co-operative Elevator Company was paying or was willing or able to pay for the same grain at the same time and place.   If, for instance, the Farmers' Co-operative Elevator Company was able to pay $1.26 per bushel for the same quality of grain and could make a reasonable profit from the transaction, it would have no cause for complaint, however much the grain raisers in the neighborhood of Dutton might have.   It is impossible to determine from this evidence whether the apparent discrimination was in favor of Chouteau or against Dutton; whether the price paid at Chouteau was more than the market warranted or whether the price paid at Dutton was unconscionably low.

This is a criminal action, and the defendant cannot be convicted upon mere suspicion.   The elements of the crime must be shown by evidence which will convince a fair-minded jury of defendant's guilt beyond a reasonable doubt, and it cannot be contended that this evidence measures up to that standard.

Without determining the validity of Chapter 8 above, we may with propriety refer to that portion of section 1 quoted above, and, in passing, remark that it appears meaningless, and particularly so when applied to a case of the character of the one attempted to be stated in the information filed in this instance.

The order is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.