IN RE ESTATE OF BANK. PLATT, APPELLANT, *v.* BANK ET AL., RESPONDENTS.

(No. 6,147.)

(Submitted September 20, 1927. Decided October 4, 1927.)

[260 Pac. 128.]

*Executors and Administrators—Probate Courts—Jurisdiction—Specific Performance of Contract of Decedent to Convey Real Property — Statutes of Nonclaim — Validity of Statutes — When Courts will not Pass upon—Judicial Discretion.*

Executors and Administrators—Statutes of Nonclaim—To What Claims Applicable Only.
1. Statutes of nonclaim deal with such debts and demands against a decedent as might have been enforced against him by personal action for the recovery of a money judgment; hence do not apply to a right of action for the specific performance of a contract to convey real property; the owner of such a right of action is not a creditor of the estate and is not required to present a claim to the executor or administrator within the time prescribed by section 10273, Revised Codes 1921.

---

1. Applicability of nonclaim statutes to claims arising under executory contract, see note in 41 A. L. R. 144. See, also, 11 R. C. L. 190.

[80 Mont. 159.]

Same—Probate Courts—Specific Performance of Contract of Decedent—
Jurisdiction—Power of Legislature to Enact Statute.
    2.   *Quaere:* Since the power to enforce specific performance of a
contract is vested solely in courts of equity, did the legislative
assembly have power to confer upon the district court, sitting
in probate, authority to enforce *written contracts for the convey-
ance of real estate under which decedents bound themselves in
their lifetime to make conveyance,* as it has done by sections
10268 et seq., Revised Codes 1921?

Appeal—Validity of Statutes—When Supreme Court will not Pass upon.
    3.   The supreme court may determine the validity of a statute
only when such determination is necessary to a decision in the
particular case before it.

Probate Courts — Jurisdiction Limited — Compelling Specific Perform-
ance of Contract of Decedent to Convey Realty—Discretion.
    4.   The district court sitting in probate has but a special and
limited jurisdiction, with such powers as are expressly granted by
statute or necessarily implied to give effect to those expressly
granted; and if such court has jurisdiction to compel the specific
performance of a contract of a decedent to convey real property,
it may act only in a case falling squarely within the provisions
of section 10268 et seq., Revised Codes 1921, i. e., where the con-
tract is in writing, and the right of the petitioner is placed be-
yond doubt by the proof, within its sound legal discretion.   .

Courts—Discretion not to be Interfered With on Appeal Unless Abuse
Shown.
    5.   Judicial discretion in the district court is not to be interfered
with on appeal unless it clearly appears that that discretion has
been abused, the burden resting upon the party charging abuse to
make it clearly appear to the supreme court.

Probate Courts—Dismissal of Petition to Compel Administrator to
Perform Specifically Contract of Intestate to Convey Realty Held
not Abuse of Discretion.
    6.   Where the allegations of a petition filed in the probate court
in an estate matter pending therein, seeking specific performance
of a contract to convey real property made by defendant adminis-
trator's intestate prior to his death, and the proof adduced showed
a departure from the letter of the agreement in a number of
particulars, i. e., nonperformance by petitioner of conditions im-
posed upon him by the written agreement to convey, the court
may not be held to have abused its discretion in dismissing the
petition under section 10273, Revised Codes 1921, on the ground
that petitioner's right to the relief asked was doubtful.

---

[1]   Executors and Administrators, 24 **C. J.**, sec. 943, p. 322, n. 71;
sec. 947, p. 325, n. 27.
[2]   Executors and Administrators, 24 **C. J.**, sec. 627, p. 150, n. 3.
Specific Performance, p. 552, n. 68, 69 New.
[3]   Constitutional Law, 12 **C. J.**, sec. 212, p. 780, n. 98.
[4]   Courts, 15 **C. J.**, sec. 426, p. 1012, n. 86, 87.   Executors and
Administrators, 24 **C. J.**, sec. 627, p. 150, n. 3, p. 151, n. 5.   Specific
Performance, 36 **Cyc.**, p. 548, n. 41, p. 549, n. 43, p. 550, n. 53, p. 551,
n. 64.
[5]   Appeal and Error, 4 **C. J.**, sec. 2753, p. 796, n. 15; sec. 2754,
p. 798, n. 21, 22.                              ·
[6]   Executors and Administrators, 24 **C. J.**, sec. 627, p. 150, n. **3.**

3.   See 6 **R. C. L.** 76.
5.   See 2 **R. C. L.** 211.

*Appeal from District Court, Silver Bow County; J. J. Lynch, Judge.*

PROCEEDING by F. S. Platt, in the Matter of the Estate of Ben Bank, Deceased, against Arthur Bank and another, as administrators, to compel the conveyance of real property belonging to the estate. From an order dismissing the petition, Platt appeals. Order affirmed.

*Messrs. Maury & Brown,* for Appellant, submitted an original and a reply brief; *Mr. H. Lowndes Maury* argued the cause orally.

*Mr. James H. Baldwin,* for Respondents, submitted a brief and argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Ben Bank, then a resident of Butte, died intestate on June 17, 1925, leaving an estate in Silver Bow county having a valuation in excess of $200,000. On July 18, 1925, Arthur Bank and H. S. Bank were duly appointed and duly qualified as administrators of the estate, and on that day published their first notice to creditors for the presentation of claims against the estate.

On June 18, 1926, without the presentation of any claim against the estate, F. S. Platt and Helen A. Platt, his wife, filed in the probate proceeding their verified petition for an order requiring the administrators to convey to them certain real estate standing of record in the counties of Jefferson and Park in the name of Ben Bank. On this petition a citation to the administrators was issued, and they thereupon appeared and moved to quash the citation and dismiss the petition on the grounds stated, that the court was without jurisdiction of the subject matter, that the petition did not state facts sufficient to warrant the relief sought, and that the petitioners had been guilty of laches. The court sustained the motion to quash, but

refused to dismiss, and granted the petitioners leave to amend, indicating wherein it considered the petition defective.

Thereafter F. S. Platt alone filed his amended petition embodying the substance of the original petition and the suggestions of the court. To this amended petition the administrators filed a motion similar to that urged against the original petition; this motion was denied, and thereupon the administrators filed written objections to the petition, denying petitioner's right to the order prayed for upon the grounds set out in their motion to dismiss and upon the ground that the petitioner, having failed to file a claim against the estate within the time allowed by law, was not entitled to the order. The heirs at law of Ben Bank, deceased, appeared herein voluntarily and filed their written objections identical with those filed by the administrators.

A hearing was had, and thereon the petitioner and one other testified in support of the petition, and, the petitioner having rested his case, the objectors moved the court to dismiss the petition. This motion was granted, and a written order made and entered in which the court "finds that the petitioner's right to demand specific performance of the contract described in his amended petition is doubtful," and therefore dismisses the petition.

The facts as they appear from the petition and proof adduced in support thereof are, briefly, as follows: At least from the year 1919 the Ben Bank Realty Company, a corporation, of which Ben Bank was president, has been the owner of a certain building in Butte in which was located the Bank Hotel, and in that year the company leased the hotel to one Mrs. Mary McCarthy for a term of ten years, at a monthly rental of $750, the lease providing that an assignment thereof could only be made with the written consent of the lessor. Mrs. McCarthy furnished the hotel, and by the terms of the lease was required to give a chattel mortgage on the furniture and fixtures as security for the payment of the rent.

It is not clear how Platt acquired the interest of Mrs. McCarthy, but in 1923 he appears to have been an assignee in

possession of the hotel with the furniture and fixtures, and was then desirous of assigning to Tanjor T. Black, Jr., and Jesse C. Black, to which transaction Ben Bank objected unless Platt would give to him security for the faithful performance of the terms and conditions of the lease by the Blacks. An agreement was evidently reached, and in October, 1923, the company leased to the Blacks, Platt and his wife 105 and 107 South Arizona Street, to be converted into a lobby for the hotel, at the expense of the lessees.

On December 6, 1923, the Blacks deeded to F. S. Platt and Helen A. Platt, his wife, all of section 27 and the northwest quarter of section 35 in township 2, north of range 4 west, in Jefferson county, for a cash consideration of $8,000, and on the same day Platt and wife deeded this property to Ben Bank as security for the faithful performance of the terms and conditions of the two leases by the Blacks for the period of six months, and Platt let the Blacks into possession of the premises. As a part of the same transaction, and on the same day, Ben Bank executed a deed to F. S. Platt for the property described and placed the deed in the First National Bank of Butte, with an escrow agreement giving to the bank—"power to deliver the same to the said F. S. Platt, if Tanjor T. Black, Jr., and Jesse C. Black shall well and truly and in all things comply with the terms and conditions of all agreements connected with the leasing by them of the Bank Hotel and those certain premises numbered 105 and 107 South Arizona Street in the city of Butte  *  *  *  for a period of six months after the date of this agreement, or if the said F. S. Platt shall return to and take possession of said premises at any time within that period on the failure of said Tanjor T. Black and Jesse C. Black to comply with all the terms and conditions of said agreements."

At the same time Bank executed and delivered to Platt the following written agreement:

"I, the undersigned, Ben Bank, do hereby promise and agree that in the event that F. S. Platt shall at any time during the period of six months after this date secure a pur-

chaser for those certain lands situated in Jefferson county, Montana, and described as [above] or any part of the same that I will cause the deed conveying said lands from me to him and this day deposited in escrow in the First National Bank in Butte, Montana, to be delivered to him upon his executing and delivering to me a deed conveying any lands that he may receive in exchange for the lands hereinbefore particularly described and depositing any cash that he may receive as a result of such sale in the   *   *   *   bank to my credit, and that, in the event that such a deed is given by him to me and such cash deposited to my credit as aforesaid, I will execute and deliver to said F. S. Platt a deed conveying the lands received   *   *   *   and return said cash to him if Tanjor T. Black, Jr., and Jesse C. Black shall well and truly and in all things comply with the terms and conditions of all agreements connected with the leasing by him of the Bank Hotel and  *   *   *   105 and 107 South Arizona Street *   *   *   for the period of six months after the date of this agreement, or if said F. S. Platt shall return to and take possession of said premises at any time within that period on the failure of said Tanjor T. Black, Jr., and Jesse C. Black to comply with all terms and conditions of said agreement.

"Dated at Butte, Montana, December 6, 1923.

"BEN BANK."

On May 17, 1924, within the six-month period, Ben Bank withdrew the escrow deed from the bank and indorsed upon the escrow directions the following:

"I certify the terms and conditions outlined above have not been met, and I acknowledge receipt of deed above referred to.

"[Signed]   BEN BANK."

Platt testified that he had no knowledge of this act on the part of Bank and that at all times during Bank's lifetime he assured petitioner that everything was all right and that the property would be turned back to him but withheld it for the purpose of reserving the proceeds for Platt's use in a joint venture they were contemplating entering into in Florida.

Prior to the expiration of the six-month period, Platt negotiated a trade of section 27 above for hotel property in Livingston, Park county, Montana, and the trade was consummated on July 18, 1924, at which time Bank deeded the section to one Evelyn Cole Schuler, who in turn deeded the hotel property to Ben Bank.

Platt testified that the matter was handled in this way at the request of Bank, and that at the time they had an oral agreement to the effect that a deed to the Schuler property was to be placed in escrow for him.

By the terms of the deed from Schuler to Bank, the grantor warranted the property free from encumbrance except as to "a certain mortgage of $7,000 * * * held by the Security Building & Loan Company of Billings, * * * which the second party agrees to assume," and, by the terms of the mortgage, the principal and interest thereon were payable in monthly installments of $102.80. It appears, inferentially, from the cross-examination of Platt that these payments were made by Bank during his lifetime and by the administrators after the death of Bank, and that the taxes on this property were also paid by him; it appears directly that no such payments were made by Platt during the period mentioned, nor had he repaid the administrators any part of such expenditures nor offered to do so.

Within two weeks after the sixth day of December, 1923, Platt dispossessed the Blacks and took possession of the Bank Hotel and thereafter paid the rent out of the proceeds of the hotel and from his personal funds, but this action was taken because the Blacks had not lived up to the conditions of certain oral agreements entered into between them and Platt, and not for failure to perform any condition mentioned in the leases referred to in the written agreement between them, Platt and . Bank.

The premises known as 105 and 107 South Arizona Street were never converted into a lobby for the hotel, as required by the terms and conditions of the second lease to the Blacks and the Platts jointly, but were used as a real estate office

by Platt; this change was made, according to Platt, by and with the consent of Bank, given orally.

It was on this showing that the court found that petitioner's claim was doubtful, and therefore ordered the dismissal of the petition.

The only specifications of error made by the petitioner are that the court erred in granting the motion to dismiss and in making the order of dismissal, and erred in not making an order directing the administrators to convey the remaining portion of the Jefferson county property and the Livingston property to the petitioner. The only question therefore, raised by the specifications of error is whether the showing made by petitioner entitled him to a conveyance under the provisions of the statute governing the proceeding instituted.

The petition in question was filed in the estate matter and the proceedings hereinbefore recited were had under the provisions of Chapter 46 of Part 4 of the Code of Civil Procedure of 1921. Therein section 10268 declares that "when a person who is bound by contract in writing to convey any real estate dies before making the conveyance, and in all cases when such decedent, if living, might be compelled to make such conveyance, the court or judge may make an order authorizing and directing his executor or administrator to convey such real estate to the person entitled thereto."

Section 10269 provides that, on the presentation of a verified petition by a person claiming to be entitled to such a conveyance, setting forth the facts upon which the claim is predicated, the court must set a time and place for hearing the petition and give notice thereof. At the time and place appointed, the court must proceed to a hearing, and "all persons interested in the estate may appear and contest such petition, by filing their objections in writing, and the court or judge may examine, on oath, the petitioner and all who may be produced before him for that purpose." (Sec. 10270.) If, after a full hearing upon the petition and objections, and examination of the facts and circumstances of the claim, the

court or judge is satisfied that the petitioner is entitled to a conveyance, an order must be made directing the executor or administrator to convey the property (sec. 10271), but, if upon the hearing the right of the petitioner to specific performance of the contract is found to be doubtful, the court or judge must dismiss the petition without prejudice to the right of the petitioner, who may, at any time within six months thereafter, proceed to an action to enforce the specific performance thereof (sec. 10273).

1. It is contended by counsel for the objectors that the [1] petitioner's right is barred by his failure to present a claim to the administrators within the time prescribed by section 10273 above. The statutes of nonclaim deal with such debts and demands as might be enforced by personal action for the recovery of a money judgment. (*Fallon v. Butler*, 21 Cal. 24, 81 Am. Dec. 140; *Estate of McCausland*, 52 Cal. 568; *Estate of Swain*, 67 Cal. 637, 8 Pac. 497.) One owning a right of action for specific performance of a contract is not creditor of the estate in this sense, and is not required to present a claim as a creditor. (*Estate of Dutard*, 147 Cal. 253, 81 Pac. 519; *Dunlap* v. *Commercial Nat. Bank*, 50 Cal. App. 476, 195 Pac. 690; 18 Cyc. 456.)

2. It is clear that the power which the legislature attempted [2] to confer by the above chapter of the Code upon the district court sitting as a probate court is that of specifically enforcing written contracts for the conveyance of real estate. (*Estate of Corwin*, 61 Cal. 160; *Estate of Garnier*, 147 Cal. 457, 82 Pac. 68.)

3. The power to enforce specific performance of a contract is vested solely in courts having equitable jurisdiction; the remedy is purely equitable, as, at common law, the only remedy available to a party injured by a breach of contract was an action for damages. (*Glock* v. *Howard & Wilson Colony Co.*, 123 Cal. 1, 69 Am. St. Rep. 17, 43 A. L. R. 199, 55 Pac. 713.)

4. In support of the order appealed from, counsel for the objectors contend that the legislative assembly was without au-

thority to confer upon the probate court the equitable powers necessarily involved in such a proceeding as this.

On this question, Mr. Chief Justice Brantly, in *Bullerdick* v. *Hermsmeyer*, 32 Mont. 541, 81 Pac. 334, said: "It may well be doubted whether, under the provisions of the Organic Act, the legislature could clothe probate courts with equitable power such as that granted by this section (*Ferris* v. *Higley*, 20 Wall. 375, 22 L. Ed. 383), but this question is not before us, and need not be decided."

Again we are not called upon to determine the constitutionality of the Act of the legislature, as an analysis if its provisions and of the facts before us will demonstrate that the order of the trial court must be affirmed on other grounds, [3] and a court may determine the validity of a statute only when such determination is necessary to a decision in the particular case before it. (*State* v. *Rocky Mt. Elevator Co.*, 52 Mont. 487, 158 Pac. 818; *Potter* v. *Furnish*, 46 Mont. 391, 128 Pac. 542; *Cashman* v. *Vickers*, 69 Mont. 516, 223 Pac. 897; *State ex rel. Toomey* v. *Board of Examiners*, 74 Mont. 1, 238 Pac. 316.)

5. The district court sitting in probate has but a special and [4] limited jurisdiction, with such powers as are expressly granted by the statute, or necessarily implied to give effect to those expressly granted (*Bullerdick* v. *Hermsmeyer*, above), and, if the trial court had jurisdiction to make the order prayed for, it could only be compelled to do so by the presentation of a case falling squarely within the provisions of the above-cited provisions of the Code.

6. While the statute provides that, "when a person who is bound by contract in writing to convey any real estate dies before making the conveyance, and in all cases when such decedent, if living, might be compelled to make such conveyance," the court may order the administrator to convey, the second clause does not enlarge the jurisdiction granted to include contracts not in writing, but rather restricts the first

clause; in other words, it is only when the decedent bound himself by a written contract to make a conveyance and the contract could be enforced against him, if living, that the court has power (if it does have that power) to enforce the contract. (*Bullerdick* v. *Hermsmeyer,* above; *Cory* v. *Hyde,* 49 Cal. 469.)

7. The proceeding provided for is summary in its nature, akin to the approval of claims against an estate; and it is only when the proof adduced places the right of the petitioner beyond doubt that the probate court is authorized to act, for "if, after a full hearing upon the petition and objections, and examination of the facts and circumstances of the claim" (sec. 10271), "the right of the petitioner to have a specific performance of the contract is found to be doubtful, the court or judge must dismiss the petition" (sec. 10273).

8. "The jurisdiction of courts of equity to decree specific performance is not a matter of right in the parties to be demanded *ex debito justitiae,* but applications invoking this power of the court are addressed to its sound and reasonable discretion," a sound legal discretion regulated by the established rules of equity, it is true, but to be exercised in cases of unfairness, hardship, laches, and the like (36 Cyc. 548–550; *Interior Securities Co.* v. *Campbell,* 55 Mont. 459, 178 Pac. 582); and here, as the court is one of special and limited jurisdiction and its power is restricted to those cases wherein the right of the petitioner is made to appear beyond doubt, the determination must be peculiarly within that sound legal discretion of the court.

9. Judicial discretion is not to be interfered with on appeal [5, 6] unless it clearly appears that that discretion has been abused (*Montana Ore Pur. Co.* v. *Boston & Mont. Consol. C. & S. Min. Co.,* 22 Mont. 159, 56 Pac. 120), and of course the burden rests upon the party charging such abuse to make it clearly appear to this court. We must determine the question as to whether the trial court abused its discretion in finding that

petitioner's right was doubtful by applying the above rules to the facts which the court had before it.

At the outset we must bear in mind the fact that the court could enforce only such a contract as was in writing and compel only those acts which the writing called for. The contract before us, considering the written agreement and escrow direction as but parts of one contract, bound Ben Bank to a delivery of the deed to the entire Jefferson county property at the expiration of six months after December 6, 1923, in the event the Black brothers performed all of the conditions of the two leases mentioned during that period, or, in the event of their failure so to do, if Platt should, within that period, retake possession of the hotel property on their failure to comply with the terms and conditions of the leases, and, in addition to this action on the part of Bank he bound himself to cause the deed placed in escrow to be delivered to Platt in the event Platt should, at any time during the six-month period, sell or trade the property described in that deed, or any part thereof, for other property, on Platt's executing and delivering to Bank a deed to the property received in trade or depositing the proceeds of a sale to Bank's credit, and in such event the second agreement bound Bank to reconvey the property received or return the money deposited, if the conditions mentioned in the escrow direction were met during the six-month period.

Had the petitioner pleaded and proved strict compliance with the provisions of the written contract, there could have been no doubt as to his right to specific performance of the contract, if the court had jurisdiction of the subject matter, and the court's refusal to grant the relief prayed for would then have been an abuse of legal discretion, demanding a reversal of the order made.

However, the allegations of the petition and the proof adduced showed a departure from the letter of the agreement in several particulars. Platt did not either sell or trade the Jefferson county property within the six-month period, but

did trade a part of it for other property forty-two days after that period had expired. This fact might not preclude recovery, as time was not made of the essence of the contract, and clearly the deal was made with the consent of Bank, but, when he did make the trade, he did not comply with the conditions of the written agreement, in that he did not take a deed to the property received and redeed it to Bank; again, this departure might be excused as a short-cut to the same result, were it not for the attending circumstances throwing some doubt upon the rights of petitioner. He testified that at the time of this transaction Bank was refusing to turn the Jefferson county property back to him, and he took the method shown for the purpose of "babying" Bank along. The question arises, and evidently arose in the mind of the trial judge, as to why, if Platt was entitled to a delivery of the deed in escrow on the sixth day of June, it was necessary on the eighteenth day of July to "baby" Bank along; as to why he did not then compel a delivery to him of the deed in escrow to which he had been entitled for more than a month and make the trade with Mrs. Schuler without consulting Bank's wishes in the matter. Platt was a real estate agent, and presumably was familiar with the handling of such transactions.

Evidently Bank took a different view of the matter as to petitioner's right at that time, for he had already withdrawn the deed from escrow and certified that Platt had failed to comply with the terms of the escrow agreement and he may have considered that he was then making a trade of his own property through the instrumentality of Platt. Of course, it is apparent that the conveyance by Platt to Bank was made only as a pledge to secure the performance, by the Blacks, of the conditions of the leases, the equitable title to the property remaining in Platt. What effect a failure to perform the conditions of a contract between strangers to the proceeding (the Blacks and the Ben Bank Realty Company) had on this title we are not called upon to determine.

Again, the condition to be met before Platt should be en‑titled to the deed in escrow was that either the Blacks should comply with all the terms and conditions of the leases for a period of six months, or Platt was to re-enter and take pos‑session of the hotel for their failure to do so. Platt's ad‑mission is that he took possession at the outset of the six-month period for failure of the Blacks to live up to a private oral agreement between them, and not for failure to perform the conditions of the leases.

This departure from the letter of the contract in the ordi‑nary action for specific performance might not be fatal, as the evident purpose of the contract was to provide that either the Blacks performed the conditions of the leases or the origi‑nal lessee returned to possession, while it did not require per‑formance of those conditions by Platt as a prerequisite to a reconveyance; but this is not the ordinary action for specific performance. The statute contemplates that a petitioner may have a good cause of action for specific performance enforce‑able in the district court exercising its equitable jurisdiction, and yet not enforceable in that court when sitting in probate, for it provides that, if the right is found to be doubtful, the petitioner must be dismissed "without prejudice to the right of the petitioner, who may, at any time within six months thereafter, proceed by action to enforce a specific performance thereof." (Sec. 10273, above.)

Again, the property traded for was not clear and the deed from Schuler to Bank required Bank to assume a mortgage of $7,000 and make payments monthly thereon, and it would seem neither just nor equitable to require a conveyance of that property without requiring the reimbursement of the Bank estate for the money expended; yet the court would be with‑out authority, under the statute, to require an accounting or enter a money judgment against the petitioner, while in an action of the district court both of these things could be done.

[80 Mont. 159.]

With these matters in the record, we cannot say that the district court, sitting, as it was, in probate, but with discretion to determine whether or not the petitioner's claim was free from doubt, abused its discretion, even though we concede, for the purpose of this decision, that it had jurisdiction of the subject matter. For the reasons stated, the order must be affirmed.

*Affirmed.*

Mr. Chief Justice Callaway and Associate Justices Myers, Stark and Galen concur.

Rehearing denied October 20, 1927.