HERBERSON, Respondent, *v.* GREAT FALLS WOOD & COAL CO. et al., Appellants.

(No. 6,345.)

(Submitted December 4, 1928.   Decided January 2, 1929.)

[273 Pac. 294.]

*Messrs. Stewart & Brown,* for Appellants, submitted an original and a reply brief; *Mr. John G. Brown* argued the cause orally.

530

*Messrs. Speer & Hoffman,* for Respondent, submitted a brief; *Mr. Harvey B. Hoffman* argued the cause orally.

MR. JUSTICE GALEN delivered the opinion of the court.

In this case the Industrial Accident Board awarded to Hilda K. Herberson, widow of Peter Herberson, compensation because of the latter's death through accident, at the rate of $15 per week, payable in monthly installments, for a period of 400 weeks. On appeal to the district court from such adjudication the same was affirmed, and the defendants have prosecuted appeal to this court from the judgment.

It appears that the Great Falls Coal & Wood Company operates a coal and wood yard in the city of Great Falls, and is bound by plan No. 2 of the Workmen's Compensation Act (sec. 2987, Rev. Codes 1921), covered by insurance issued by the London Guaranty & Accident Company. On the morning of February 23, 1926, at about the hour of 7:20, the deceased on his way to the plant of the Great Falls Coal & Wood Company, where he worked, alighted from a south-bound street-car on Ninth Street at a safety stop where the tracks of the Great Northern Railway Company cross the street at right angles, and was thereupon struck and fatally injured by an automobile driven north on Ninth Street at an excessive rate of speed on the wrong side of the

street. On the day following, death resulted from the injuries inflicted. The deceased lived across the Missouri River, a considerable distance to the north of the plant, and had been in the habit of boarding the street-car near his residence every morning at 7 o'clock, leaving the car at the point where the accident occurred, usually about the hour of 7:16 A. M. The employer's plant is located about two blocks, 900 feet, from this point. By this route it was necessary for deceased to leave the street and walk along the spur-tracks of the Great Northern Railway, on its right of way, leading toward the coal company's premises. Such premises were inclosed by a wire fence and could be entered by two gates, the main or south gate and the north gate. Both gates were locked after working hours. Had deceased entered his place of employment by the south gate it would have necessitated walking about three blocks farther; consequently he habitually came and went by the north gate to which he carried a key, locking it at the conclusion of his day's labor and unlocking it in the morning on his way to work. Work at the plant began at 8 A. M. each day, and in the operations of the coal company such gate was required to be open at times. The foreman of the coal company testified that, while it was "not necessarily" the deceased's duty to unlock the north gate in the morning, he knew that deceased carried a key to it, and frequently entered the plant that way. In addition, there is evidence, standing uncontradicted, to the effect that it was a part of the deceased's daily work incident to his employment to open the north gate, and it is evident that the decision of both the Industrial Accident Board and the district court is predicated upon such testimony.

The Industrial Accident Board found that "opening the gate before 8 o'clock each morning and having the custody of the key for this purpose, was an extra duty and not the usual day's work. The route taken was not a public highway. Peter Herberson was exposed to the hazard of an accident, because of this extra duty he was required to perform."

And, on appeal, the district court found that "in going to his work, Herberson could have ridden a block further, gotten off at Eighth Avenue and Ninth Street North. He would then have had to walk three blocks west to the gate entrance at Sixth Street and on through the coal yards to the northeast gate, making it necessary for him to walk at least twice as far as the shorter, more direct, convenient and expeditious route taken by him. This shorter route, to unlock and open this certain gate, was taken by Herberson, if not at the express command, it was with the knowledge and, from all the facts and circumstances in the case, the certain and clear implied direction of the coal company, his employer, and who provided him with a key for that special and certain duty."

The case is now before us on appeal upon identically the same record upon which the Industrial Accident Board and the district court rendered decision, so that we are in the same position as they in making determination of the rights of the parties under the law. However, in entering upon a consideration of this appeal, this court indulges the presumption that the judgment of the district court is correct, and it will be upheld, unless clearly shown to be erroneous, the burden of which rests upon the appellant. (*State* v. *Rocky Mountain Elevator Co.*, 52 Mont. 487, 158 Pac. 818; *Dover Lumber Co.* v. *Whitcomb*, 54 Mont. 141, 168 Pac. 947; *State* v. *Schoenborn*, 55 Mont. 517, 179 Pac. 294.) And, on an appeal from an award made under the Compensation Act, after review by the district court, this court will not reverse the judgment, unless the evidence clearly preponderates against it. (*Willis* v. *Pilot Butte Min. Co.*, 58 Mont. 26, 190 Pac. 124.) In these cases the findings and decisions of the court will not be disturbed, where there is any evidence to support them. (*Morgan* v. *Butte etc. Co.*, 58 Mont. 633, 194 Pac. 496; *Nicholson* v. *Roundup Coal Mining Co.*, 79 Mont. 358, 257 Pac. 270.)

By the terms of the statute it is provided that every employer, who shall become bound by and subject to the provi-

sions of the Compensation Act under the three plans therein provided for, shall be liable for the payment of compensation as prescribed to an employee who has elected to come under the provisions of the Act who shall receive an injury "arising out of and in the course of his employment." (Sec. 2911, Rev. Codes 1921.)

The problem with which we are confronted in disposition of this appeal is to determine whether, under the facts stated, viewed in light most favorable to the claimant, an award of compensation is justified. In applying the law to the facts the statute must be most liberally construed (sec. 2964, Rev. Codes 1921; *Page* v. *New York Realty Co.*, 59 Mont. 305, 196 Pac. 871), and following such basic principle, can the accident which caused the death of the employee in this case, be said to have arisen *"out of and in the course of his employment"*?

It is to be noted that the Act does not define the phrase "arising out of the employment," and, as for judicial definition, it is universally conceded that no comprehensive formula can be devised which will determine with certainty the application of this phrase. Each case must be decided upon its own fact features in the application of the law. The decisions of the courts attempting to apply this statutory restriction in the award of compensation are so numerous that it would take more time than we have at our disposal to review and consider them. The terms *"arising out of"* and *"in the course of"* the employment are used conjunctively, and, in order to satisfy the statute, both conditions must be present. (*Wiggins* v. *Industrial Accident Board,* 54 Mont. 335, Ann. Cas. 1918E, 1164, L. R. A. 1918F, 932, 170 Pac. 9; *Wirta* v. *North Butte Min. Co.*, 64 Mont. 279, 30 A. L. R. 964, 210 Pac. 332.) The words "in the course of an employment" refer to the time, place, and circumstances under which the accident took place, and an accident arises "in the course of the employment" if it occurs while the employee is performing a duty, imposed upon him by his employer, connected

with his employment. (*Wirta* v. *North Butte Min. Co.,* supra.)

The correct principles applicable here are forcibly stated by Mr. Justice Sutherland, speaking for the supreme court of the United States, in a case, arising under the statutes of Utah, involving similar facts, as follows: "Workmen's Compensation legislation rests upon the idea of status, not upon that of implied contract; that is, upon the conception that the injured workman is entitled to compensation for an injury sustained in the service of an industry to whose operations he contributes his work as the owner contributes his capital,—the one for the sake of the wages and the other for the sake of the profits. The liability is based, not upon any act or omission of the employer, but upon the existence of the relationship which the employee bears to the employment because of and in the course of which he has been injured. And this is not to impose liability upon one person for an injury sustained by another with which the former has no connection; but it is to say, that it is enough if there be a causal connection between the injury and the business in which he employs the latter,—a connection substantially contributory, though it need not be the sole or proximate cause. Legislation which imposes liability for an injury thus related to the employment, among other justifying circumstances, has a tendency to promote a more equitable distribution of the economic burdens in cases of personal injury or death resulting from accidents in the course of industrial employment, and is a matter of sufficient public concern (*Mountain Timber Co.* v. *Washington,* 243 U. S. 239, Ann. Cas. 1917D, 642, 61 L. Ed. 697, 37 Sup. Ct. Rep. 260, 13 N. C. C. A. 927), to escape condemnation as arbitrary, capricious, or clearly unreasonable. Whether a given accident is so related or incident to the business must depend upon its own particular circumstances. No exact formula can be laid down which will automatically solve every case. The fact that the acci-

dent happens upon a public road or at a railroad crossing, and that the danger is one to which the general public is likewise exposed, is not conclusive against the existence of such causal relationship, if the danger be one to which the employee, by reason of and in connection with his employment, is subjected peculiarly or to an abnormal degree." (*Cudahy Co.* v. *Parramore*, 263 U. S. 418, 30 A. L. R. 532, 68 L. Ed. 366, 44 Sup. Ct. Rep. 153.) The construction so given to similar language employed in the Utah statute is lucid and wholly in accord with the purpose and spirit of our Compensation Act, and is by us approved unqualifiedly.

In a more recent decision (February 20, 1928), it appeared that an employee was accidentally killed while walking across a railroad track on his way to work, which track was adjacent to the plant operated by the employer, and employees in going to work were required to cross such track. Again, speaking through Mr. Justice Sutherland, the court adverted to its former decision in the *Parramore Case,* and, in holding the accident compensable under the Utah statute, said: "Liability was constitutionally imposed under the Utah compensation law if there was a causal connection between the injury and the employment * * * substantially contributing to the injury. * * * And employment includes not only the actual doing of the work, but a reasonable margin of time and space necessary to be used in passing to and from the place where the work is to be done. If the employee be injured while passing, with the express or implied consent of the employer, to or from his work by a way over the employer's premises, or over those of another in such proximity and relation as to be in practical effect a part of the employer's premises, the injury is one arising out of and in the course of the employment as much as though it had happened while the employee was engaged in his work at the place of its performance. In other words, the employment may begin in point of time before the work is entered upon

and in point of space before the place where the work is to be done is reached. Probably, as a general rule, employment may be said to begin when the employee reaches the entrance to the employer's premises where the work is to be done; but it is clear that in some cases the rule extends to include adjacent premises used by the employee as a means of ingress and egress with the express or implied consent of the employer. (Id., p. 426.) And see generally, *Procaccino* v. *E. Horton & Sons,* 95 Conn. 408, 111 Atl. 594; *Merlino* v. *Connecticut Quarries Co.,* 93 Conn. 57, 104 Atl. 396; *Corvi* v. *Stiles & R. Brick Co.,* 103 Conn. 449, 130 Atl. 674; *Starr Piano Co.* v. *Industrial Acc. Com.,* 181 Cal. 433, 436–438, 184 Pac. 860; *Sundine's Case,* 218 Mass. 1, 4, L. R. A. 1916A, 318, 105 N. E. 433, 5 N. C. C. A. 616.'' (*Bountiful Brick Co.* v. *Giles,* 276 U. S. 154, 72 L. Ed. 286, 48 Sup. Ct. Rep. 221.)

Again, in a case arising under like circumstances, the supreme court of Pennsylvania, in applying like statutory provisions, held the claimant entitled to compensation. In that case the employee was injured while upon a railroad track which he customarily walked over en route to start mine pumps in advance of daily operations. It was by that court said, we think correctly, and applicable to the case now before us: ''The nightly trip to the mine was in furtherance of the master's business, to do an errand for the master and he was properly on the latter's time, not merely at the moment of starting the pumps, but going and coming as well. Had it been Cymbor's duty to unlock the plant in the morning, so the workmen could enter, would he be in the master's employ while going to and from the plant, or merely while turning the key, or at most while on the master's premises, and is there any difference between unlocking a door and starting a pump, between turning a key and turning a button? In either case the real labor is in going to and from, and while doing so the employee is engaged in the master's business the same as if sent on an errand from the

mine to a neighboring village. As suggested by appellant, had plaintiff lived five miles away, could it be urged he was only on duty when actually starting the pumps, and yet the principle would be the same. Cymbor, when killed, was on the usual and direct route from his home to the mine, so the suggestion that he may have been going elsewhere is without force. The case is not analogous to that of a day laborer whose work and pay begin when he arrives in the morning and end when he quits in the afternoon.'' (*Cymbor* v. *Binder Coal Co.*, 285 Pa. 440, 132 Atl. 363.)

Applying these principles of construction of the statute to the undisputed facts, we are of opinion that the claimant is entitled to compensation, and that the award was justly made. It must be conceded that the evidence is meager, that the case is dangerously near the border line, and that it is difficult to reconcile our conclusions reached herein with the decision of this court in the case of *Wiggins* v. *Industrial Accident Board*, supra. Suffice it to say, in our opinion, the evidence in this case shows a causal connection between the injury sustained and the duties imposed upon the deceased by his employer in the course of his regular employment, and that we are not favorably impressed with the conclusion reached in the *Wiggins Case*. Here, the deceased was actually moving in the course of his employment toward the gate over his accustomed route, for the purpose of opening it in advance of business activities in and about his employer's plant, when injured. He had the key to the north gate in his pocket, and was intent upon opening it before work commenced at the plant, and was actively moving from the point where he alighted from the street-car in the direction of his employer's premises to perform a duty arising out of his employment, and along a route known by his employer to have been constantly taken by him in going to and returning from work, without objection on the part of his employer, when he received fatal injury.

We take occasion to compliment J. Burke Clements, chairman of the Industrial Accident Board, upon his intelligent application of the law to the facts in this case, since he was required to decide the questions presented upon the cold record, and is not a member of the legal profession. The testimony in the case was taken before Jerome G. Locke, former chairman of the board.

The claimant, respondent here, has made cross-assignment of error because of the failure of the Industrial Accident Board and the court to make allowance to the claimant for expenses incurred for hospital and doctor bills and funeral expenses incident to the employee's injury and death.

It is by the express terms of the Act provided that "there shall be paid in addition to other compensation, if death due to injury occurs while the employee is drawing or entitled to draw compensation payment, the reasonable burial expenses of the employee not exceeding one hundred and fifty dollars." (Sec. 2916, Rev. Codes 1921, as amended by Chapter 121, sec. 13, Laws of 1925.) And that, "during the first six months after the happening of the injury, the employer or insurer or the board, as the case may be, shall furnish reasonable medical, surgical and hospital service and medicines when needed, not exceeding in amount the sum of five hundred dollars, unless the employee shall refuse to allow them to be furnished, and unless such employ [employer] is under a hospital contract, as provided, in section 2907 of this Act." (Id., 2917, as amended by Chapter 121, sec. 14, Laws of 1925.)

Accordingly, since the claimant is entitled to compensation, the injury and death of the employee, having arisen "out of and in the course of his employment," the insurer is required, in addition to the payment of the compensation adjudged, to pay the burial expenses of the employee, not exceeding the sum of $150, and expenses incurred for reasonable medical, surgical and hospital service, and medicines needed by the employee after the accident. The district court

will make determination of such amounts due the claimant and modify its judgment by the addition thereof, and, when so modified, the judgment will stand affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MYERS and MATTHEWS concur.