WILLIAMS, Respondent, *v.* BROWNFIELD–CANTY CO. ET AL., Appellants.

(No. 7,160.)

(Submitted October 28, 1933.   Decided November 10, 1933.)

[26 Pac. (2d) 980.]

*Mr. John K. Claxton,* for Appellants, submitted a brief and argued the cause orally.

Mr. *H. J. Freebourn* and Mr. *N. A. Rotering,* for Respondent, submitted a brief; *Mr. Rotering* argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

This is an appeal from a judgment of the district court of Silver Bow county affirming an order of the Industrial Accident Board granting compensation to Johanna Williams, widow of John P. Williams, deceased.

On March 13, 1931, Johanna Williams filed a claim for compensation. She alleged the death of her husband, John P. Williams, an employee of the Brownfield-Canty Carpet Company, of Butte. The facts briefly stated are as follows: The carpet company was enrolled under plan 2 of the Workmen's Compensation Act (Rev. Codes 1921, sec. 2816 et seq., as amended), and the American Surety Company was insurer. On January 26, 1931, John P. Williams was an employee of the carpet company. His usual work was that of a carpet layer. It was the custom of the company to send him out to make collections when there was no work in his particular line. On the day in question he was directed by his employer to make certain collections. He proceeded to the home of William P. Lightfoot, in Walkerville. Lightfoot lived on the lower floor of a residence at 412 West Daly Street, and Mrs. Berryman, mother of Mrs. Lightfoot, resided on the upper floor. Williams descended an outside stairway, then covered with ice. He fell and struck his back and the back of his neck. No one saw the accident but Mrs. Berryman, and Mr. and Mrs. Lightfoot heard the noise or thump when his body struck the steps of the stairway. Two of the steps were broken. Mrs. Berryman called to Williams and asked if he was hurt; he replied that he was. That evening Williams returned to his home and complained to his wife that he had fallen and hurt himself. From that time forward he suffered severe pains in his neck and back, was unable to sleep at night and constantly complained to his wife. He had vomiting spells and a discharge from his ear. On the night of February 2 he lapsed into unconscious-

ness; a doctor was called; he was taken to the hospital and died on February 4 without regaining consciousness. Doctors Canty and McMahon performed an autopsy on the head only, but failed to find any indications of external injury.

Mrs. Williams testified that her husband had always been strong and healthy, had worked steadily until the time of the accident, and that he did not have any sickness or physical trouble of any kind prior to the accident. The doctors diagnosed the case as streptococcus meningitis, and testified that it was caused by germification. Dr. McMahon and Dr. Canty testified that the man died from streptococcus meningitis, but they did not say, and would not say, that the infection came from the injury. Each one did say, however, that his "final opinion" was that the fall had something to do with the infection.

The Industrial Accident Board made findings or conclusions to the effect that the fall either directly brought about the death or was the cause of weakening the condition of his head to such an extent that the disease developed and killed him. The findings and decision of the board must be sustained if there is any evidence to support them. This principle now constitutes a recognized rule in this state. (*Brajcich* v. *Republic Coal Co.,* 94 Mont. 568, 23 Pac. (2d) 337. See, also, *State* v. *Rocky Mountain Elevator Co.,* 52 Mont. 487, 158 Pac. 818; *Dover Lumber Co.* v. *Whitcomb,* 54 Mont. 141, 168 Pac. 947; *Willis* v. *Pilot Butte Min. Co.,* 58 Mont. 26, 190 Pac. 124; *Morgan* v. *Butte etc. Co.,* 58 Mont. 633, 194 Pac. 496; *Nicholson* v. *Roundup Coal Min. Co.,* 79 Mont. 358, 257 Pac. 270.)

Appellants assert that the award by the board is based upon conjecture, speculation and surmise, and therefore should be set aside. The fact of the fall was not established by conjecture, speculation or surmise. That fact was well established and not denied. The same may also be said of the immediate and continuing disability. These matters were questioned at the trial and on this appeal, but nowhere were they actually contradicted by evidence. All admit the attack of meningitis and that it was the immediate cause of his death. The only

break in the sequence of clearly established facts is the gap between the injury and the disease. Was the meningitis traceable to the injury? Was it established at the trial that there was connection between the injury and the disease? The board found that there was connection, and that the fall brought about the death of the deceased.

Appellants assert that, because the doctors did not say positively that the disease came as a direct result of the injury, the matter was left open to conjecture and surmise. The doctors both testified that in their opinion the injury had something to do with the disease, and, of course, therefore with the death. It is true that there was no direct testimony by anyone that one was the result of the other, but the board had a right to consider all of the circumstances as well as the direct evidence. The law does not require demonstration or such a degree of proof as, excluding the possibility of error, produces absolute certainty, because such proof is rarely possible. (*Moffett* v. *Bozeman Canning Co., ante,* p. 347, 26 Pac. (2d) 973.)

We cannot say that there was no evidence before the board and the court to support the findings. There were facts and pertinent circumstances in the record sufficient, if believed, amply and reasonably to support the findings of the board. Having made the findings, and believing, as we do, that there was evidence to support them, they must stand. (Compare *Moffett* v. *Bozeman Canning Co.,* supra. See, also, *Gilmore* v. *Ostronich,* 48 Mont. 305, 137 Pac. 378, and *Exchange State Bank* v. *Occident Elevator Co., ante,* p. 78, 24 Pac. (2d) 126.)

Thus far we have treated the case as though no question had been raised as to the jurisdiction of the board. Appellants, however, have raised that very point. They contend that deceased was not protected by the provisions of the Compensation Act, and that the Industrial Accident Board was without jurisdiction. In support of their contention they cite *Page* v. *New York Realty Co.,* 59 Mont. 305, 196 Pac. 871, and *Moore* v. *Industrial Accident Fund,* 80 Mont. 136, 259 Pac. 825, 826.

In order to treat this matter intelligently, we must have in

mind the Compensation Act as construed and administered in this state. Soon after the Act went into effect, the question of division of coverage as between employees came in question. The board took the position that, if any employees of a given employer were under the provisions of the Act, they all were, and proceeded upon that theory. In so doing they were acting in accordance with an opinion of the Attorney General, found in volume 6 of the Reports and Official Opinions of the Attorney General, at page 370. In 1919 the legislature made direct declaration on that subject. (Chap. 100, Laws of 1919.) The section originally standing as section 4 of the Act of 1915, Chapter 96, as amended, is now section 2847, Revised Codes of 1921. The amended section carries the following additional provision: "And any employer having any workmen engaged in any of the hazardous works or occupations herein listed shall be considered as an employer engaged in hazardous works and occupations as to all his employees." This amendment by legislative adoption recognized the construction placed upon the Act by the Attorney General and the board, and authorized a continuance of the administration of the Act with that principle in effect. The board, however, again requested the Attorney General for a legal construction of the amended Act, and he held: "This section as amended apparently means what it says, and the purpose of the amendment was to preclude any doubt as to the intention of the legislature to include in the Act all of the employees engaged in an occupation where a part of them were engaged in hazardous work." (Volume 2, Decisions of the Industrial Accident Board of Montana, p. 51.) Thus it will be seen that, from the inception of the administration of the Compensation Act down to the present day, the practice has been to include under the Act all of the employees engaged in an occupation where a part of them were engaged in hazardous work. We are of the opinion that the question raised by the appellants here has been settled by direct legislative declaration, as well as by the practice of the board. The objection raised by the appellants here cannot stand in the face of the statute.

The *Page* and *Moore Cases,* supra, are not in point, because in the *Page Case* application had been made for enrollment under the Act and had been rejected by the Industrial Accident Board. In the *Moore Case,* county commissioners had not been brought under the Act, although the Industrial Accident Board had considered the matter and had said that it did not "feel justified in attempting to force these officials to carry compensation upon themselves."

It is not necessary, however, for us to engage in an elaborate discussion of this matter in the present case, because it appears that there is no question but what Brownfield-Canty Carpet Company, employer, was under the Act for part of its employees, and, as we have said, if it was under it for part of its employees, it was under it for all of them. The statute in effect at the time of the accident was controlling.

The argument of appellants that employment by an employer may be of a dual character, and that one employee may be covered and another one without protection, of course, falls before the provisions of the Act. The cases cited by them—*Crockett* v. *Industrial Acc. Com.,* 190 Cal. 583, 213 Pac. 969, and *Amsbaugh* v. *Department of Labor. & Industries,* 128 Wash. 692, 224 Pac. 18—do not control here. In fact, they do not bear out appellants' contention, because they were decided under statutes which are different from those in effect in this state.

The practice of the board and the amendment of the Act by the legislature in 1919, heretofore adverted to, were in conformity with sound doctrine. The Massachusetts supreme court, in discussing the principle, said: "It is clear from those provisions that the Act is not designed to be accepted in part and rejected in part. If an employer becomes a subscriber he becomes a subscriber for all purposes as to all branches of one business with respect to all those in his service under any contract of hire. All the terms of the Act are framed upon the basis that the employer is either wholly within or altogether outside its operation. There is no suggestion or phrase warranting the inference that there can be a divided or partial insurance. The practical administration of the Act renders

it highly desirable that a single rule of liability should apply throughout any single business. Otherwise difficult and troublesome questions often might arise as to liability or nonliability dependent upon classifications of employees and scope of their duties. Litigation as to the line of demarcation between those protected by the Act and those not entitled to its benefits would be almost inevitable. Instead of being simple, plain and prompt in its operation, such division of insurance would promote complications, doubts and delays." (*In re Cox*, 225 Mass. 220, 114 N. E. 281, 283.)

It is clear that the amendment of 1919 intended to reach the exact principle announced in the *Massachusetts Case*, supra. The Attorney General, in construing the Act for the board, quoted the language of that case with approval.

The contention of appellants that Williams was covered while working as a carpet layer, but passed from under the protection of the Act when he went out as a collector, is untenable under our statutes. In any event, the principle is not very well supported as a general proposition, in the absence of such a statute as ours. Honnold on Workmen's Compensation, volume 1, page 394, section 114, lays down the rule that, if the employee though outside the sphere of his original employment, is obeying specific instructions of his employer, he is within the course of his employment, and continues: "When an injury arising from a risk of the business is suffered while the employee, though not strictly in the line of his duty at the time, is still doing something incidental to his work, he will ordinarily be entitled to compensation. If a workman depart temporarily from his usual avocation to perform some act necessary to be done by someone for his master, he does not cease to be acting in the course of his employment. He is then acting for his master, not for himself. A rule of law which in such case would put an employee outside his usual course of employment and so to deprive him of his right to compensation for an injury suffered, would punish energy and loyalty and helpfulness, and promote sloth and inactivity in employees. It would certainly prove detrimental to industry. And such a spirit of disregard

of the master's interest, if carried into all of the work, would in time cripple industry. Besides this rule would be impracticable. One trade must occasionally overlap another, if the work is to go on expeditiously and productively." (See, also, Boyd's Compensation for Injuries to Workmen, sec. 488, p. 1068.)

Appellants have cited and vigorously urge a number of Oklahoma cases in support of their contention that deceased was not engaged in a hazardous occupation within the meaning of the Workmen's Compensation Act. A comparison of the Oklahoma statutes with our own makes obvious the fact that these cases are not in point. In direct contradistinction to our statute heretofore explained, the Oklahoma statute (Stats. Okl. 1931, sec. 13350) restricts the Act to those "engaged in manual or mechanical work." It is interesting to note, however, that, in spite of the restriction of the statute, the Oklahoma court, in several decisions has attempted to expand the statute beyond its exact language. (See *Pawnee Ice Cream Co.* v. *Price,* (Okl. Sup.) 23 Pac. (2d) 168, and *Oklahoma-Arkansas Tel. Co.* v. *Fries,* 128 Okl. 295, 262 Pac. 1062.)

To summarize the matter, we hold that the accident was proved; that the resulting injury was established; that there was evidence of connection between the injury and the disease (meningitis); and, finally, that Williams was protected by the Compensation Act, and that his beneficiary is entitled to prevail. Briefly, we hold that there was evidence to support the findings of the Industrial Accident Board and the district court. Judgment affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN, MATTHEWS and ANDERSON concur.

Rehearing denied December 5, 1933.